[Civ. No. 16813. Second Dist., Div. Three. Sept. 20, 1949.]

THE UNION NATIONAL BANK OF PASADENA, as Trustee, etc., Plaintiff and Respondent, v. JENNIE FRASER HUNTER, Individually and as Administratrix, etc., et al., Appellants; MATTHEW W. HUNTER, Defendant and Respondent.

Roland Maxwell and Paul H. Marston for Appellants.

Clarence M. Heublein for Defendant and Respondent.

SHINN, P. J.—Jennie Fraser Hunter, individually and as administratrix of the estate of Rachel J. Fraser, appeals from a judgment directing the payment of certain income of an *inter vivos* trust created by Rachel J. Fraser.

Article VI of the trust instrument, which was executed on July 8, 1932, provided that the entire net income from the trust estate was to be paid to the trustor during her lifetime; upon her death, to her husband during his lifetime; and upon his death (or if he predeceased the trustor, then upon her death) to her daughter, Jennie Fraser Hunter, during her lifetime. Upon the death of Jennie Fraser Hunter, or if she predeceased the survivor of the trustor and her husband then upon the death of such survivor, the trust was to terminate

and the entire principal and undistributed income was to become the property of William Fraser Hunter, the trustor's grandson. Subsequent to the execution of the trust, the trustor's husband died. Thereafter, on September 2, 1939, pursuant to a power reserved, the trustor amended article VI to read: "ARTICLE VI The entire net income received from the trust estate and available for distribution, shall be paid in quarterly or other convenient installments to the Trustor while she shall live.

"(a) Upon the death of the Trustor the Trustee shall pay the net income, as hereinabove provided from the remaining trust estate, as follows:

"1. One-half thereof to Mrs. Jennie Fraser Hunter, daughter of the Trustor, and

"2. One-half thereof to William Fraser Hunter, grandson of the Trustor.

"(b) Upon the demise of Mrs. Jennie Fraser Hunter, daughter of the Trustor, this trust shall terminate and the entire remaining trust estate, principal and undistributed income, shall then· be distributed, paid to and become the property of her son, William Fraser Hunter, if he be then living.

"(c) In the event that William Fraser Hunter, grandson of the Trustor, is not living at the time of the death of Jennie Fraser Hunter, then upon the termination of the trust upon the death of Mrs. Jennie Fraser Hunter, the entire remaining trust estate, principal and undistributed income, shall then be distributed, paid to and become the property of the legal heirs of the Trustor, Rachel J. Fraser, under the laws of succession of the State of California, and the trust thereupon terminated."

William Fraser Hunter died unmarried, and without issue, on July 5, 1945, bequeathing all of his property to his father, Matthew W. Hunter, the divorced husband of appellant. The trustor died on July 14, 1946. Union National Bank of Pasadena, as trustee, thereafter brought this action to determine the proper disposition of the income which, under the amendment of 1939, would have been paid to William Fraser Hunter had he survived the trustor, and also of income accrued but undistributed prior to the death of the trustor. The court held that, by the amendment, "the trustor gave to William F. Hunter a gift of one-half (½) of the net income of the said trust for the duration of the said trust, which is for the life of Jennie Fraser Hunter." It also found that the trust instru-

ments made no provision for distribution of income accrued but undistributed at the time of Rachel J. Fraser's death, and concluded that section 4 of the Principal and Income Act (Stats. 1941, ch. 898, p. 2476; 3 Deering's Gen. Laws, Act 8696) governed as to such distribution. By the judgment, one-half of the net income accruing subsequent to the trustor's death, together with one-half of the income accrued but not actually received by the trustee prior to the trustor's death, was ordered to be paid to respondent Matthew W. Hunter, as personal representative of the estate of William F. Hunter. All income actually received but not distributed by the trustee prior to trustor's death was ordered to be paid to appellant, as administratrix of the trustor's estate. Appellant contends that the estate of William F. Hunter is not entitled to any of the trust income, and that his share thereof should be paid to her, either in her individual capacity as surviving cobeneficiary, or in her capacity as administratrix, as intestate property of the trustor's estate.

 Nowhere in the trust instrument, as amended, is to be found any express provision for the disposition of one-half of the net income in the event William predeceased his mother, Jennie, upon whose death the trust was to terminate. Yet, that the trustor contemplated such a possibility is seen in paragraph (c) of the amendment, which provides that if William is not living at the time of Jennie's death, the corpus shall go to the trustor's heirs. Under the circumstances, there being no authorization for accumulations, three possible dispositions might be made of the half of the income otherwise payable to William: (1) It might be paid to Jennie, as the surviving cobeneficiary; (2) it might be paid to the estate of William; (3) it might be paid to the trustor's estate as property not disposed of by the trust instrument. The question for decision is which of these solutions should be followed. The answer depends, ultimately, upon the intention of the trustor as manifested by the language of the trust instrument. (1 Scott on Trusts § 143, p. 718; *Moxley* v. *Title Ins. & Trust Co.*, 27 Cal.2d 457, 462 [165 P.2d 15]; 25 Cal.Jur. § 145, pp. 286-287.) Since the trial court's decision was based solely on the terms of the written instruments, the issue is one of law upon which this court is required to make its independent determination. (*Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825]; *First Trust & Sav. Bank* v. *Costa*, 83 Cal.App.2d 368, 372 [188 P.2d 778].)

■ Appellant's contention that the income should be paid to her personally is based on the proposition that the survivor of two concurrent life beneficiaries possesses an implied cross-remainder in the estate of the deceased cobeneficiary, in the absence of a manifestation of a contrary intention. In support of her argument, appellant cites authorities adopting this view where a trustor has created two or more concurrent estates for life held as a tenancy in common with an express remainder to the survivor, or to a third person on the death of the survivor. (Rest., Property, § 115, p. 359; 140 A.L.R. 841, and cases cited pp. 844-854.) The cited authorities are not in point. Where the possession and use of the property, as distinct from the mere income thereof, is the subject of conveyance, some courts have implied a cross-remainder in order to carry out the intention of the trustor to transfer the entire undiminished corpus as a unit to the remaindermen upon the termination of the trust. (See *Dow* v. *Doyle,* 103 Mass. 489; *Glover* v. *Stillson,* 56 Conn. 316 [15 A. 752]; *Jones* v. *Cable,* 114 Pa. 586 [7 A. 791].) Others have reached the same result where income is given to the beneficiaries as a class and not individually (see *In re Boyer's Estate,* 115 Pa.Super.Ct. 501 [175 A. 728]; *Clarke* v. *Rathbone,* 221 Mass. 574 [109 N.E. 651]), or where the language of the trust instrument justifies an inference that the income is to be shared equally among such of the named beneficiaries as are living, until the termination of the trust. (See *Loring* v. *Coolidge,* 99 Mass. 191; *New Jersey Title Guarantee & T. Co.* v. *Elsworth,* 108 N.J.Eq. 229 [154 A. 602]; *Kramer* v. *Sangamon Loan & Trust Co.,* 293 Ill. 553 [127 N.E. 877].) The cases uniformly acknowledge that the rule of interpretation favoring cross-remainders by implication is only invoked in order to effectuate a manifested intention of the trustor to achieve that result. (See, also, *Rhode Island Hospital Trust Co.* v. *Proprietors of Swan Point Cemetery,* 62 R.I. 83 [3 A.2d 236, 243]; *In re Grothe's Estate,* 229 Pa. 186 [78 A. 88, 90]; 33 Am.Jur. § 83, p. 540.) Such intention may be reasonably inferred in particular factual situations such as those presented in appellant's cases. The present circumstances, however, are quite different, and provide no logical footing upon which to rest an implied cross-remainder in Jennie. On its face, the trust instrument conferred not a tenancy in common, but a separate gift of one-half of the income each to William and Jennie; the corpus vested in the remaindermen not on the death of the survivor, but on the death of Jennie, irrespective of when William should die; and

the corpus clearly would pass to the remaindermen as a whole regardless of the disposition of the income prior to the termination of the trust. At no place in the amendment has the trustor manifested an intention that Jennie should at any time receive more than one-half of the income. At least one purpose of the amendment, in fact, was to reduce her interest to one-half. We are persuaded that there would be no legal justification for awarding the income in question to appellant as cobeneficiary.

The trial court's decision to award the income to the estate of William was premised on the theory, strenuously urged by respondent, that the amendment *expressly* conferred a vested gift of one-half of the income to William for the life of Jennie. It may be conceded that if the premise is sound, the award finds ample support in authority. (*Harrison* v. *Marden,* 298 Mass. 148 [10 N.E.2d 109, 112 A.L.R. 577] ; *Thompson* v. *Martin,* 281 Mass. 41 [183 N.E. 51] ; *Montanye* v. *Montanye,* 29 App.Div. 377 [51 N.Y.S. 538] ; *White* v. *Strowbridge,* 133 Ore. 638 [291 P. 798].) It is well settled, however, and the foregoing cases contain nothing to the contrary, that "an annuity, in terms payable for a fixed or ascertainable period, will not pass to the annuitant's estate upon his death before the expiration of such period, where the instrument in which the annuity is created shows an intention that payments shall be personal to the beneficiary." (Anno. 112 A.L.R. 581, 584, and cases there cited; see, also, *First Nat. Bank of Chicago* v. *Cleveland Trust Co.,* 308 Ill.App. 639 [32 N.E.2d 964, 974] ; *Union Trust Co.* v. *Fisher,* 240 Mich. 68 [214 N.W. 941] ; 33 Am.Jur. § 3, p. 463.)

We are satisfied that the trust instrument sufficiently reveals the trustor's intention that the gift to William was to be a personal one limited to the duration of his life. The amendment merely gives one-half of the net trust income "to William Fraser Hunter, grandson of the Trustor," without more. Unlike the cases upon which respondent relies, there are no qualifying words providing that the gift shall be "for the life of" Jennie, although that would be the usual and customary way to express such an intention. Article I of the trust instrument requires the trustee to distribute the income "to or for the purposes hereinafter stated and for the use and benefit of the beneficiaries *hereinafter named.*" Article IX provides, in part, that "all income and/or principal shall be payable and deliverable *only and personally to the respective*

*beneficiaries entitled thereto.''* Reading article I and article IX together, it appears from the portions thereof which we have italicized that the income was not to be paid to anyone other than the named beneficiaries in person. It would seem self-evident, as was said in respect to a substantially identical trust provision in *First Nat. Bank of Chicago* v. *Cleveland Trust Co., supra,* 32 N.E.2d at p. 975, quoting from *Routt* v. *Newman,* 253 Ill. 185 [97 N.E. 208, 209], that '' 'the continued existence of the recipient of the fund was necessary to a compliance with this requirement.' '' The First National Bank and Routt cases both held that a provision for payment of trust income to the beneficiary in person showed an intention to limit the gift to the life of the beneficiary and thus precluded payment to his estate following his death prior to the termination of the trust. These cases alone sufficiently sustain the conclusion we have reached. But we need not rely solely upon them.

Article VIII of the trust provides additional evidence of the trustor's intent to make a personal gift. The relevant provisions of that article read, ''If the income from this trust to which . . . any beneficiary of the trust may be entitled shall, in the discretion of the trustee . . . be insufficient . . . to provide any such beneficiary with reasonable care in case of illness or accident, then the Trustee may pay to, apply or expend for the use and benefit of such person so much of the principal, up to and including the whole thereof, as the Trustee may deem advisable, but not in the case of beneficiaries other than the Trustor . . . to exceed such part of the principal as is proportionate to the share of income such person is entitled to receive hereunder.'' Permission to invade the corpus for the welfare of the beneficiaries of the trust, by which we understand the trustor to mean the named beneficiaries, is in full accord with the concept of a personal gift, but not with respondent's theory that William's income interest was vested for the duration of Jennie's life. The latter theory, moreover, is clearly inconsistent with the expressed intention of the trustor that William is to take the corpus only in the event he survives his mother, and that if he does not survive her, it is to be ultimately distributed to the heirs of the trustor. Since the heirs of William, at least in the absence of any children who might also take under the trust as heirs of the trustor, were precluded from sharing in the corpus in the event which has occurred, it is highly improbable, and there is clearly no basis in the language of the trust for inferring,

that the trustor intended such heirs to share in the income under such circumstances. It is more reasonable to infer that the trustor intended that the income would follow the corpus. We hold that the gift to William was personal to him, and did not survive his death.

█ Upon thorough consideration, we are convinced that the trustor has failed to provide for the disposition of one-half of the trust income in the present situation. Viewing the trust instrument and its scheme of disposition as a whole, and construing its words in context so as to carry out the trustor's intentions, we are unable to discern any expressed desire, nor any attempt at such expression, that the income should go either to William's surviving cobeneficiary or to his estate. In the language of *Estate of Kruce,* 10 Cal.App.2d 426, 429 [51 P.2d 1174], we may observe that " [W]e are not asked to construe an imperfect or incomplete disposition, but to supply one which is not expressed at all, and which, we think, is not necessarily implied. If the testator omitted, as we are satisfied he did, to make a specific disposition of the remainder of the trust estate in the event that has occurred, that omission may not be supplied by the court. This is true whether the omission be the result of design or oversight." It follows that one-half of the trust income accruing subsequent to the death of Rachel J. Fraser to the termination of the trust should be paid to the personal representative of Rachel J. Fraser's estate for distribution as property undisposed of by the trust instrument. (See *In re French's Estate,* 292 Pa. 37 [140 A. 549, 550]; *In re Grothe's Estate, supra; Glaser* v. *Chicago Title & Trust Co.,* 393 Ill. 447 [66 N.E.2d 410, 418-419]; *Routt* v. *Newman,* 253 Ill. 185 [97 N.E. 208, 209]; *First Nat. Bank of Chicago* v. *Cleveland Trust Co., supra; In re Knox's Estate,* 328 Pa. 188 [195 A. 34]; *Equitable Trust Co.* v. *Johnson,* —— Del.Ch. —— [36 A.2d 257]. *Cf. Estate of Hamon,* 136 Cal.App. 517 [29 P.2d 326].)

█ No objection is urged upon the appeal to the distribution by the judgment of all income accrued but undistributed at the time of the trustor's death, pursuant to the provisions of section 4 of the Principal and Income Act. Accordingly, we see no occasion for disturbing the award to the trustor's estate of income in the hands of the trustee at her death. With reference to income accrued but not actually received by the trustee prior to the trustor's death, however, section 4 provides it shall go to "the person next entitled to income by the terms

of the transaction by which the principal was established.''
In view of the conclusions we have already reached, it is clear
that the award of one-half of this income to the estate of
William F. Hunter must fall. Although we have held the
trustor's heirs entitled to income, their right flows not from
the terms of the trust but from the laws of succession. It
follows that Jennie Fraser Hunter, being the only person
satisfying the statutory requisites, is entitled to all of the
income accrued but not actually received by the trustee prior
to the death of Rachel J. Fraser.

The judgment is reversed with directions to enter a decree
in conformity with the views herein expressed.

Wood, J., and Vallée, J., concurred.