262 Cal.App.2d 32 (1968)
Estate of FRED G. ROBINSON, Deceased, and MAY N. ROBINSON, Deceased. EVELYN HAUG, Petitioner and Appellant,
v.
LOLA M. ROBINSON PADGETT et al., Claimants and Appellants.
Civ. No. 796. 
California Court of Appeals. Fifth Dist. 
May 8, 1968.
 Eugene A. Mash for Petitioner and Appellant.
 Alfred A. Affinito and Gerald A. Belleci for Claimants and Appellants.
 GARGANO, J.
 Appellant Evelyn Haug is a surviving daughter of testators Fred G. Robinson and May N. Robinson. Appellants Lola M. Robinson Padgett and Dorene Robinson Hoyt are the children of testators' deceased son, Fred G. Robinson, Jr., and the grandchildren of the testators. Appellants all appeal from a judgment of the Superior Court of Merced County determining interests in the testators' estates. However, since they present opposed points of view, we shall refer to testators' daughter as appellant Haug, and to the grandchildren as appellants Padgett and Hoyt. Moreover, since the trial court's decision was based solely on the terms of the testators' will the issues presented herein are issues of law, and we shall make our own independent determination *35 (Estate of Platt, 21 Cal.2d 343 [131 P.2d 825]; First Trust & Sav. Bank v. Costa, 83 Cal.App.2d 368 [188 P.2d 778]).
 Decedents made their joint and mutual will on June 28, 1949. At the time testators' seven children, two sons and five daughters, were all living. The pertinent provisions of this will are as follows. It establishes a spendthrift trust to contain the bulk of testators' sizeable estates. 17 1/2 percent of the trust income is to be distributed to each of testators' two sons, 12 percent to each of testators' five daughters, and 5 percent for an emergency fund to be distributed to testators' children in the event of need. The will, however, is silent as to what should be done with a trust beneficiary's income during the period between his death and the death of testators' last surviving child. It simply provides that the trust shall terminate upon the death of testators' last surviving child and that the corpus shall be distributed equally among testators' grandchildren and great grandchildren then living, or in the alternative, if none is living, to the University of California.
 On June 26, 1959, testators made a codicil to their joint and mutual will. At the time testators' son, Fred G. Robinson, Jr., had died. Thus, testators directed their trustee to distribute his 17 1/2 percent share of the trust income in equal parts to their other son and five daughters. At the same time they limited the amount to be accumulated in the emergency fund to not more than 10 percent of the entire trust estate.
 While the estates were still in administration, testators' daughters petitioned the probate court to determine interests and for declaratory relief. They asserted that upon the death of their parents each income gift vested in the income beneficiary and this vested interest passes to the beneficiary's estate upon death. Appellants Padgett and Hoyt then filed a statement of interest in opposition to the petition. They alleged that upon the death of an income beneficiary his or her interest terminates and must be added to the principal of the trust to be distributed to testators' grandchildren and great grandchildren when the trust terminates. However, the court rejected both contentions and implied cross-remainders; the court held that on the death of each income beneficiary his or her share of the income must be distributed equally to the testators' surviving children. [fn. 1] *36
 [1] All appellants apparently agree that the probate court correctly interpreted the testators' intent to distribute the trust income. This view seems appropriate since the will does not contain any express provision for the accumulation of excess income and for its eventual addition to the trust fund (see Union Nat. Bank v. Hunter, 93 Cal.App.2d 669, 673 [209 P.2d 621]). Moreover, the testators indicated that they wanted the income distributed, not accumulated, when they limited the amount of the emergency fund to 10 percent of the entire trust estate. Appellant Haug, however, still asserts that the income gifts to the income beneficiaries are vested interests. On the other hand, appellants Padgett and Hoyt presently maintain that the trust income payable to a deceased beneficiary must be treated as intestate property of the testators to be distributed under the laws of succession.
 [2] It has been repeatedly stated that the intention of the testator is the "polar star of construction" to which all other rules must yield. Thus, a will must be construed according to the intention of the testator, no matter how unusual or unreasonable his intention may be (Prob. Code, 101; Estate of Spreckels, 162 Cal. 559 [123 P. 371]). [3] Moreover, the law favors testacy as against intestacy, and a construction that results in total or partial intestacy must be avoided if possible (Prob. Code, 102; Estate of Cuneo, 60 Cal.2d 196 [32 Cal.Rptr. 409, 384 P.2d 1, 7 A.L.R.3d 1132]). [4] Consequently, if a will is uncertain in one or more particulars a court may resort to well-established rules of construction for assistance (Estate of Ferry, 55 Cal.2d 776 [13 Cal.Rptr. 180, 361 P.2d 900, 90 A.L.R.2d 300]). Such rules may not be used as a substitute for the testator's clear intention; yet in dubious cases the court may not cast aside the rules to engage in pure speculation (Prob. Code, 100; and see Fuller v. Fuller, 229 Cal.App.2d 532, 540 [40 Cal.Rptr. 393]).
 We shall consider the trial court's decision implying cross-remainders and appellants' contrary contentions with these salutary principles in mind.
 Implied Remainders
 [5] It is uniformly acknowledged by the cases that implied cross- remainders are not favored and that this rule of *37 interpretation is only invoked to effectuate a clear intention of the testator to achieve that result. As the court succinctly stated in Union Nat. Bank v. Hunter, 93 Cal.App.2d 669, 674 [209 P.2d 621]: "Where the possession and use of the property, as distinct from the mere income thereof, is the subject of conveyance, some courts have implied a cross-remainder in order to carry out the intention of the trustor to transfer the entire undiminished corpus as a unit to the remaindermen upon the termination of the trust. (See Dow v. Doyle, 103 Mass. 489; Glover v. Stillson, 56 Conn. 316 [51 A. 752]; Jones v. Cable, 114 Pa. 586 [7 A. 791].) Others have reached the same result where income is given to the beneficiaries as a class and not individually (see In re Boyer's Estate, 115 Pa.Super.Ct. 501 [175 A. 728]; Clarke v. Rathbone, 221 Mass. 574 [109 N.E. 651]), or where the language of the trust instrument justifies an inference that the income is to be shared equally among such of the named beneficiaries as are living, until the termination of the trust. (See Loring v. Coolidge, 99 Mass. 191; New Jersey Title Guarantee & T. Co. v. Elsworth, 108 N.J.Eq. 229 [154 A. 602]; Kramer v. Sangamon Loan & Trust Co., 293 Ill. 553 [127 N.E. 877].) The cases uniformly acknowledge that the rule of interpretation favoring cross-remainders by implication is only invoked in order to effectuate a manifested intention of the trustor to achieve that result. (See, also, Rhode Island Hospital Trust Co. v. Proprietors of Swan Point Cemetery, 62 R.I. 83 [3 A.2d 236, 243]; In re Grothe's Estate, 229 Pa. 186 [78 A. 88, 90]; 33 Am.Jur., 83, p. 540.)"
 Manifestly, we are here concerned with disposition of income and not with the possession and use of the corpus. Moreover, in the instant case the testators did not expressly will the trust income to their children as a class to be shared equally between them nor does the language of the will justify such an inference. Significantly, the only expression which the testators made in this respect forecloses this conclusion. When the testators made their codicil after the death of their deceased son, Fred G. Robinson, Jr., they directed their trustee to distribute his share of the trust income in equal parts to their other children. Thus, they obviously believed that the express direction was necessary in order to accomplish the result. However, they gave no similar directions for the distribution of the trust income upon the death of any of their other children. *38
 According to the trial judge's memorandum of decision, when he implied cross-remainders he relied mainly on the rationale of Union Nat. Bank v. Hunter, supra, 93 Cal.App.2d 669. However, this case is contrary to, not supportive of, the trial court's decision. Although the Hunter court recognized the possibility of implying cross-remainders, it held against such an implication for lack of support in the trust instrument. Significantly, the will in the Hunter case gave each beneficiary a set amount (one-half each) of the income and nowhere expressed an intent that any beneficiary should ever get more. Similarly in the instant case, the will and the codicil defined only a set percentage of the trust income for each beneficiary.
 Vested Interests
 [6] Appellant Haug argues that since her deceased parents did not leave the trust income to their children as a class or in joint tenancy, and since they did not expressly limit the duration of the gifts to the lives of the beneficiaries, the income gifts are pur autre vie; they are all measured by the life of the last surviving child. Thus, appellant concludes that each income beneficiary has a vested interest in his own gift which continues to exist after his death and which passes to his own heirs so long as any child of the testators lives.
 There is of course substantial authority for the proposition that if a testator intended an income beneficiary to receive the income during the entire lifetime of someone else, the gift is pur autre vie and passes to the beneficiary's heirs upon his death.
 However, when we read the testators' will as a whole and consider its general scheme, we conclude it is reasonably clear the testators could not have intended the result advocated by this appellant.
 First, the corpus of the trust is not willed to a surviving child. It is willed in equal shares to the grandchildren and great grandchildren of the testators who are living when the trust terminates. Thus, the testators manifested an intention to treat all grandchildren and great grandchildren alike. However, if an income gift to a deceased beneficiary passes to his estate it could also be distributed to his children. This in turn would favor some of the decedents' grandchildren over others.
 Second, when the testators made their codicil after the death of their son, Fred G. Robinson, Jr., they directed their trustee to distribute his share of the income in equal parts to *39 their six remaining children even though the deceased son was survived by two daughters. Thus, to urge that the testators intended their other children to have vested interests which passed to each deceased child's estate until the death of the last surviving child is to urge that the testators intentionally discriminated against their deceased son's heirs. Manifestly, such flagrant discrimination should not be imputed to the testators in the absence of clear and unequivocal language to justify it.
 Third, the words that the testators used simply indicate that they intended each of their children to receive a specified percentage of the trust income during his or her lifetime. The will expressly shows that the testators were trying to give each of their children enough income to provide for their needs. The will authorizes the trustee to use the emergency fund if he determines the income distribution is insufficient "to provide for the reasonable support, care and comfort of such beneficiary." Also, the testators' will establishes a spendthrift trust which provides that the beneficiaries' interests shall not be subject to claims of creditors, legal process or voluntary or involuntary alienation. This testamentary scheme will be effectively thwarted if an income gift passes to a deceased child's executors or administrators.
 We note with interest the decision of the Supreme Court of Illinois in Routt v. Newman, 253 Ill. 185 [97 N.E. 208], in which the court considered an almost identical question. In that case the testatrix set up a spendthrift trust with one-fourth of the income to go to each of her four sons. The trust was to continue until all four sons died. It also provided that upon the death of a son his one- quarter share of the income was to go to his children, subject to the spendthrift provision. One son died, leaving a surviving child. This child also died before the trust had terminated. The deceased grandson's mother then claimed a share of the income as a vested interest which passed to his estate. The court, after pointing to the spendthrift provision of the trust, stated: "The continued existence of the recipient of the fund was necessary to a compliance with this requirement. The portion of testatrix's property included in the trust was manifestly intended to be placed beyond the reach of creditors of the beneficiaries, and that object was an important part of the scheme. She gave other property to her sons in fee simple, but the control of this portion she intended should be so restricted that neither the land itself nor the income could be reached by any *40 creditors during the lifetime of any of her sons. The language quoted is first used in regard to the sons and is then repeated as applying to their children, and in our judgment limits the time during which a share of the net income shall be paid to any child of a son, in his lifetime." (97 N.E. at p. 210.)
 Intestacy
 [7] We now turn to the claim of appellants Padgett and Hoyt. Succinctly, they assert that since the testators' true intent cannot be ascertained without engaging in sheer speculation, the income gift to each beneficiary lapses upon the death of the beneficiary and must be treated as the testators' intestate property to be distributed accordingly.
 Appellants' contention is also without substantial merit. The will, when considered as a whole, clearly demonstrates that the testators intended to make a complete disposition of their property. In fact, the third paragraph states:
 "It is the intention of each and of both of us to dispose of by this instrument all of said property."
 Moreover, these appellants are the very grandchildren that the testators ignored when they made their codicil after the death of appellants' father. From that fact they have persuasively argued that the theory advocated by appellant Haug is contrary to the testamentary scheme since it does not treat the grandchildren and great grandchildren equally. However, they subtly seek to accomplish the same result in their favor through intestacy; by right of representation a deceased beneficiary's children (including appellants) could receive a share of any trust property distributed from Mr. and Mrs. Robinson's estates according to the laws of intestate succession (Prob. Code, 222).
 Conclusion
 [8] We conclude that since there are no clear directions for the distribution of the trust income upon the death of the income beneficiaries (with the exception of decedent's deceased son, Fred G. Robinson, Jr.), and the will contains no valid direction for the accumulation of this income, such income, upon the death of each beneficiary becomes undisposed-of trust income to be distributed equally to the testators' grandchildren and great grandchildren as the persons presumptively entitled to the next eventual interest (the corpus) pursuant to the provisions of Civil Code section 733. This section provides: "When, in consequence of a valid limitation of a future interest, there is a suspension of the power of alienation or of the ownership during the continuation *41 of which the income is undisposed of, and no valid direction for its accumulation is given, such income belongs to the persons presumptively entitled to the next eventual interest." (Italics added.)
 It is of course true that only the grandchildren and great grandchildren living when the trust terminates are entitled to share in the corpus of the trust. However, even so, the grandchildren and great grandchildren living at the death of a beneficiary are the presumptive takers of the corpus and section 733 refers to presumptive, not actual, takers. In fact, a similar solution was adopted by the Supreme Court in Estate of Lefranc, 38 Cal.2d 289, 299-301 [239 P.2d 617]. There a testamentary trust was to last for the life of one niece with the corpus to be distributed to her children or, if none, to a second niece. The first niece lost her interest by violating a no contest clause in the will. At the time she had no children. Thus, the trust instrument no longer disposed of the income during the first taker's life. Applying section 733, [fn. 2] the court held that the trust continued in existence during the life of the first niece with the income paid to the second niece, as the presumptive taker of the next estate until such time as the former should have a child. Also, in Estate of Charters, 46 Cal.2d 227, 239-240 [293 P.2d 778], the Supreme Court reversed the trial court's order that accumulated trust income be paid to the life beneficiary. The life beneficiary was to get a set amount of income per month, and the trust instrument did not provide for accumulation of any excess income. Reaffirming Estate of Lefranc, supra, the Supreme Court held that Civil Code section 733 controlled distribution of the accumulated income not disposed of by the trust instrument.
 We point out that the distribution of the excess trust income pursuant to section 733 not only fairly resolves the dilemma which was created by the testators' omission but reasonably conforms with the testators' intention as gathered from their testamentary scheme when this scheme is viewed in *42 its entirety. It enables each of the testators' children to have his or her share of the trust income in the percentage specified by the will during his or her entire lifetime as the testators have expressly specified. It allows the trustee to distribute all of the excess trust income at a time when it may be needed by the ultimate beneficiaries, instead of accumulating it in an estate which is already quite sizeable. And most important, it treats all of the grandchildren and great grandchildren equally as the testators undoubtedly intended.
 The judgment is reversed with directions to the superior court to modify its orders and decrees to determine interests in the estates of Fred G. Robinson and May N. Robinson to conform with the views expressed herein.
 The attempted appeals from the findings of fact and conclusions of law are dismissed.
 Conley, P. J., and Stone, J., concurred.
 "4. That the children of Fred G. Robinson, Jr. [deceased son of settlors] ... are to receive nothing until the distribution of the trust estate after its termination."
 "5. That the share of income of a child of the decedents Fred G. Robinson and May N. Robinson who shall die after the date of death of Fred G. Robinson and May N. Robinson is not to be accumulated, nor paid to his estate or heirs, but shall be divided equally among the other surviving children of Fred G. Robinson and May N. Robinson."
NOTES
[fn. 1] 1. The pertinent portions of the court's order read as follows:
[fn. 2] 2. The Supreme Court, in stating the circumstances under which section 733 is applicable, stated: "The situation to which the statute applies is presented by the following facts: (1) a valid limitation of a future interest,--that is, an interest which is limited to take effect in possession at a future time; (2) a suspension of the power of alienation or of the ownership of the property,--i.e., a valid trust; (3) an accrual of income during the trust period; (4) an absence of a valid direction for the accumulation of the income. ... The question as to who, within the meaning of the statute, are the persons 'presumptively entitled to the next eventual interest,' is to be determined by reference to the provisions of the will."