## Haggerty's Estate.

504

Argued April 10, 1933. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Vandling D. Rose,* with him *Herman J. Goldberg,* Deputy Attorney General, and *Wm. A. Schnader,* Attorney General, for appellant.—The right of a joint owner of personal property, or of a joint tenant of real estate, under a survivorship agreement, to the interest of his coöwner or cotenant, is a contingent and not a vested right: Bambaugh v. Bambaugh, 11 S. & R. 191; Palairet's App., 67 Pa. 479; Sachse v. Myers, 15 Pa. Superior Ct. 425; Mardis v. Steen, 293 Pa. 13; McKelway's Est., 221 N. Y. 15; Saltonstall v. Saltonstall, 276 U. S. 260; Chase Nat. Bank v. United States, 278 U. S. 327; Tyler v. United States, 281 U. S. 497.

*R. J. O'Malley,* of *O'Malley & O'Malley,* for appellee. —No right passes at death, no transfer occurs at death, nor is there any succession at death; the actual transfer occurs upon the creation of the estate of joint tenancy: Leach's Est., 282 Pa. 545; McIntosh's Est., 289 Pa. 509.

Opinion by Mr. Justice Maxey, May 26, 1933:

This is an appeal from the decree of the Orphans' Court of Lackawanna County setting aside the transfer inheritance tax levied under the Act of May 16, 1929,

P. L. 1795, section 1 (e) by the Commonwealth on one-half of a joint bank account. This account was in the names of "Agnes Haggerty or Mary Haggerty."

On June 26, 1927, these two women, who were sisters, opened a savings account with the First National Bank of Scranton. The initial deposit was $4,476. The only evidence of the amounts deposited therein until November 14, 1928, was an "Account Card." On this latter date the sisters entered into a written agreement with the First National Bank of Scranton with respect to their joint account. This agreement provided "that any and all sums of money as may from time to time stand on this account to the credit of the undersigned depositors shall be taken and deemed to belong to them as joint tenants and not as tenants in common, and in case of death of either, the First National Bank of Scranton is hereby authorized and directed to deal with the survivor as sole and absolute owner thereof." Deposits were made in this account until March 23, 1932, when Mary Haggerty died. There were no withdrawals. At the time of this agreement the amount credited to this account was $5,997.46, representing moneys deposited in equal portions by the sisters. They continued to make deposits in equal amounts so that at the date of Mary Haggerty's death the total sum then credited to this account, $12,454.94, represented moneys deposited by the sisters in equal shares, plus interest thereon.

On May 16, 1929, the legislature of Pennsylvania passed an act amending section 1 of the Act of June 20, 1919, P. L. 521, the amending act being found in 72 P. S., section 2301. This Act of May 16, 1929, provides as follows: First, "that a tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom in trust or otherwise," in certain cases, and among the cases is the following: "Whenever any property, real or personal, is held in the joint names of two or more persons, except as tenants by the entirety, or is deposited in banks or

other institutions or depositories in the joint names of two or more persons, except as husband and wife, and payable to either or the survivor upon the death of one of such persons, the right of the surviving person or persons entitled to the immediate ownership or possession and enjoyment of such property shall be deemed, prima facie, a transfer of one-half, or other proper fraction thereof, taxable under the provisions of this act, in the same manner as though this part of the property to which such transfer relates belonged to joint tenants or joint depositors as tenants in common, and had been bequeathed or devised to the surviving person or persons by such deceased joint tenant or joint depositor by will."

The Commonwealth contends that the right of a joint owner of personal property, or of a joint tenant of real estate, under a survivorship agreement, to the interest of his coöwner or cotenant, is a contingent and not a vested right and therefore is not within the protection given vested rights against taxation by legislative enactment passed after their vesting.

As to the nature of the interest held under a joint tenancy, Blackstone says (Book 2, sections 182, 184) : "Each [joint tenant] has an undivided moiety of the whole, and not the whole of an undivided moiety. ...... The entire tenancy, upon the decease of any of them, remains to the survivors. ...... This is the natural and regular consequence of the union and entirety of their interest. The interest of two joint tenants is not only equal or similar, but also is one and the same. One has not originally a distinct moiety from the other. ...... While it continues, each of two joint tenants has a concurrent interest in the whole; and therefore on the death of his companion, the sole interest in the whole remains to the survivor."

Though by the Act of March 31, 1812, 20 P. S., section 121, the right of survivorship has in Pennsylvania ceased to exist as an incident of a joint tenancy, yet it may "be legally created as a principal": Arnold v. Jack's Exrs.,

24 Pa. 57; Leach's Est., 282 Pa. 545, 549, 128 A. 497. In the case under review it was so created on November 14, 1928. The status of Agnes Haggerty and Mary Haggerty in relation to the fund with its accretions, held in their joint names in the First National Bank of Scranton, was fixed by their agreement of the date just stated. The statute passed six months later purported to tax "transfers" of property. When Mary Haggerty died in 1932 nothing in respect to this joint bank account was "transferred" from her to her surviving sister; the sole interest in the whole account merely *"remained* to the survivor."

The purpose of the Act of 1919, P. L. 521, which was amended by the Act of May 16, 1929, P. L. 1795, was, as is clearly expressed in the title, to provide "for the imposition and collection of property passing from a decedent......" Section e of the Act of 1929, which is now invoked by the Commonwealth only makes, as applied to this case, the right which the surviving sister had to the immediate ownership or possession and enjoyment of the joint deposit "prima facie a transfer" of property from the deceased sister to her and therefore a subject of taxation. But since there was in fact and law no transfer from the deceased sister to the survivor, of any interest in that joint fund, there was no transfer to be taxed. Whatever initial transfer of interests in their respective moneys took place between these sisters took place when the joint deposit was created by them on November 14, 1928, six months before the taxing Act of 1929 was passed. Each deposit subsequently made to this joint fund simply increased the corpus of the deposit jointly held by the sisters.

Appellant cites the case of Tax Commission of Ohio v. Hutchinson, 120 Ohio St. 361, 166 N. E. 352. That case is based on the Ohio Statute reading: "Whenever property is held by two or more persons jointly, so that upon the death of one of them the survivor or survivors have a right to the immediate ownership or possession and

enjoyment of the whole property, the accrual of such right by the death of one of them shall be deemed a succession taxable under the provisions of this subdivision of this chapter in the same manner as if the enhanced value of the whole property belonged absolutely to the deceased person, and had been by him bequeathed to the survivor or survivors by will." There is a vital difference between the phrase "shall be deemed *prima facie a transfer*" (as appears in the Pennsylvania statute) and the phrase "shall be deemed *a succession taxable* under the provisions of this subdivision" (as appears in the Ohio statute). The latter leaves no doubt of the legislative intent to tax as a "succession" the "accrual" of whatever "rights" or "enhanced value" in a joint fund a survivor or survivors of two or more persons holding property jointly may have by the death of one of the joint owners. The Pennsylvania legislature simply said in its enactment that if there is a "transfer" of property on the death of one joint owner, the survivor shall be taxed on that "transfer," but whether or not there is a "transfer" is an open question with the burden cast upon the survivor (the "prima facies" being the other way) to prove that there was in fact and law *no* transfer. This burden the survivor in the case before us fully met.

The foregoing is in accord with the decision of this court in Leach's Est., supra, wherein it was said in an opinion by Mr. Justice SADLER: "This relationship [of joint tenancy] exists where there has been established 'a single estate in property, real or personal,' so that the two or more interested persons become owners under an express agreement: 33 C. J. 901. In such case 'the [one] who survives does not take the moiety of the other tenant from him or as his successor, but takes it by right under the conveyance or instrument by which the joint tenancy was created' (33 C. J. 904), for title by survivorship was held to follow as an incident thereto.".

Appellant's contention that the tax should be sustained at least as to deposits made after the date of the

Act of 1929 must also be negatived. As noted above, the Act of 1929 is an amendment to certain sections of the Act of June 20, 1919, P. L. 521, which act purported to tax the "transfer of property *passing from a decedent.*" The amendment designated as (e) in section 1 clearly relates to "transfers" of interests in real or personal property, including bank deposits, "held in the joint names of two or more persons" to survivors upon the death of one of the joint holders. The act makes such transfers "taxable......in the same. manner as though this part of the property to which such transfer relates belonged to joint tenants or joint depositors as tenants in common, and had been bequeathed or devised to the surviving person or persons by such deceased joint tenant or joint depositor by will." Mary Haggerty had no interest in the total deposits (whether they antedated or postdated the agreement of November 14, 1928) held in the joint names of herself and her sister which was capable of passing to Agnes Haggerty by will. Nothing in respect to this bank deposit "passed from the decedent" Mary Haggerty to Agnes Haggerty.

The case of Tyler v. U. S., 281 U. S. 497, cited by appellant, is inapplicable here, because the federal taxing act expressly provided that in computing the net estate for purposes of taxation, the value of the interest in property held jointly or as tenants by the entireties by the decedent and any other person, except such part thereof as may be shown to have originally belonged to such other person and never to have belonged to the decedent, should be included. In that case the Supreme Court of the United States in an opinion by Mr. Justice SUTHERLAND said: "The question here, then, is, not whether there has been, in the strict sense of that word, a 'transfer' of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which

510

Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights."

In the case before us the express language of the applicable act does make "the question here" to be whether or not there has been a transfer of a property interest in the joint bank account, from the decedent, Mary Haggerty, to her sister Agnes. There was no such "transfer" and the challenge to this "transfer tax" must therefore be sustained.

The decree is affirmed; costs to be paid by appellant.