## Bowie Estate

*McBride & McBride*, for appellants.

*John V. Wherry*, for Commonwealth.

ROWLEY, P. J., July 19, 1950.—This is an appeal by Bertha Ann Bowie, widow of Matthew Bowie, and by the executor of his estate from the assessment of transfer inheritance tax upon certain United States savings bonds.

The following are the undisputed facts:

Matthew W. Bowie died August 17, 1948, survived by his wife, Bertha Ann Bowie, one of the appellants.

Decedent in partnership with John B. Snyder conducted a coal stripping operation. Snyder was business manager for the partnership and, presumably because of his proficiency, also aided both decedent and Mrs. Bowie in transacting their individual financial affairs.

The principal number of the bonds in question were purchased by Snyder, with funds supplied in part from her own funds by Bertha Ann Bowie, and, in part, supplied by Matthew W. Bowie, her husband. At the direction of Matthew W. Bowie, Snyder caused the bonds purchased with funds of the husband to be inscribed in the names of husband or wife. Similarly, by direction of Bertha Ann Bowie, Snyder caused the bonds purchased with her funds to be inscribed in the names of husband or wife.

In pursuance of the aforesaid instructions, during a period from January 12, 1942, to November 14, 1945, Snyder purchased some 30 United States savings bonds of series E of denominations varying from $25 to $500 and aggregating a face value of $3,725. Of these bonds, an aggregate face value of $1,725 were inscribed in the names, "Matthew W. Bowie or Mrs. Bertha Ann Bowie", and "E" bonds of the aggregate value of $2,000 were inscribed in the names, "Mrs. Bertha A. Bowie or Matthew W. Bowie".

Also, in pursuance of aforesaid instructions, during a period from June 24, 1944, to November, 1945, Snyder purchased eight United States savings bonds series G, of the aggregate face value of $7,500, which were inscribed in the names "Matthew W. Bowie or Mrs. Bertha Ann Bowie".

Also, in pursuance of aforesaid instructions, during a period from February 14, 1944, to May 22, 1945,

Snyder purchased five United States savings bonds of series G, aggregating $3,000, which were inscribed in the names "Mrs. Bertha A. Bowie or Matthew W. Bowie".

Also, in pursuance of aforesaid instructions, Snyder purchased a $1,000 United States bond in April, 1943, and a $500 bond in February, 1944, both series "G", which were inscribed in the names "Matthew Bowie or Mrs. Bertha A. Bowie".

Decedent had a safe deposit box in Grove City National Bank. The persons formally authorized to have access to this box were decedent and Snyder. The bonds purchased as aforesaid were placed in this box. Nothing else was contained in the box. The business partnership of decedent and Snyder maintained a different box.

Checks for interest upon some of the bonds were at times delivered to the partnership office and by Snyder, or at his direction, redelivered to decedent's home. Snyder aided decedent's wife in the conduct of her principal financial transactions in addition to the bond purchases. All of the bonds remained in the safe deposit box in the bank until the death of Matthew W. Bowie, whereupon the Commonwealth assessed transfer inheritance tax at the rate of two percent upon $12,000, the par value of the United States savings bonds of series G, and upon $2,865.25, the market value of the E bonds on date of decedent's death, these bonds being inscribed as aforesaid. Thus the Commonwealth treated all the bonds as part of decedent's estate, whereas appellants contend that the wife acquired a tenancy by the entirety in the bonds on the dates of the respective purchases and that she succeeded to the full title upon the death of her husband without tax liability, the legislature having expressly exempted from tax the accrual of such rights to a surviving spouse.

We are convinced that Snyder acted as agent in financial matters for each spouse, and for both of them

jointly, by reason of his aptness or for the sake of their convenience. There is nothing to warrant an inference that the husband sought to limit his wife's access to the box. She did visit the box on occasions in the company of Snyder.

The Commonwealth insists that an estate by entireties in the bonds did not exist because there had been no delivery to the wife and because it is not possible to create an estate by entireties in United States savings bonds.

We shall first discuss the matter without regard to the effect of the regulations of the United States Treasury Department under which the bonds were issued. The wife's title to personal property held in the names of herself and husband is not dependent upon a delivery to her distinct from a delivery to her husband: Geist et al. v. Robinson, 332 Pa. 44. The essential characteristic of an estate by the entireties is that each spouse is seized of the whole or the entirety, and not of a share, moiety or divisible part. There is but one estate, and, in contemplation of law it is held by one person: Gasner v. Pierce, 286 Pa. 529. The possession of either is the possession of both. Snyder as agent for each, and for both, had implied authority to receive and deliver the bonds on behalf of either or both and to so deposit them. Furthermore, the instant bonds evidenced a declaration by each spouse that the other had a joint interest therein and that the proceeds were to be payable to either. The Commonwealth seems to emphasize that the bonds were inscribed in the names husband *or* wife, not husband *and* wife. It has been repeatedly held that the use of the disjunctive "*or*" in such circumstances is equivalent in all respects to the conjunctive "*and*": Madden et al. v. Gosztonyi Savings & Trust Company, 331 Pa. 476; Sloan's Estate, 254 Pa. 346; Bostrom v. National Bank of McKeesport, 330 Pa. 65. Where property is held in the name of hus-

band and wife the presumption is that they hold it by entireties and not as ordinary joint tenants or tenants in common. A tenancy by entireties arises whenever an estate vests in two persons, they being, when it so vests, husband and wife. It may exist in personal as well as real property, in a chose in action (mortgage and bond) as well as in a chose in possession: Bramberry's Estate, 156 Pa. 628. See also Geist v. Robinson, supra. However, this distinction is to be observed when an account is payable to "husband *and* wife" and where it is payable to "husband *or* wife".

"Where a deposit is payable to 'husband *and* wife',— a deposit by entireties—the husband and wife may withdraw the funds if they sign together. But there is nothing in the law relating to entireties that would prevent the wife from giving the husband express authority to sign for her as her agent and withdraw for both of them, although no such authority may be implied.

"When, on the other hand, an account is made payable in its creation to either 'husband *or* wife', there is an immediate expression of authority, of agency to act for both. As an incident of these estates by entireties is the power that each gives the other at the time of the estate's creation, to act for the other. This conclusion is beyond debate": Madden et al. v. Gosztonyi S. & T. Co., supra.

An intention to create the entirety is assumed from deposit in both names and from the fact of marital relationship: Blumner v. Metropolitan Life Ins. Company, 362 Pa. 7.

The sharp difference between such accounts and other joint accounts or tentative trusts has been clearly indicated in many cases: Geist v. Robinson, supra.

The Commonwealth urges that title to the bonds could not be held by the entireties because either party had the power to sell the bonds. This question was

considered in Berhalter v. Berhalter et al., 315 Pa. 225, as to a bank account in the names of husband or wife, payable to either, where the Supreme Court said:

"It is the contention of appellant that when the parties expressed in the agreement that 'either of them' could withdraw all or any part of the fund, one of the elements essential to an estate by entirety was lacking, which she describes as the unity of control, but, while unity of control must exist, O'Malley v. O'Malley, 272 Pa. 528, this is bound up in the four incidents of such an estate. The fund withdrawn is still subject to the legal status of the estate, and it has stamped on it in the hands of the one who withdrew it all the elements of a trust. Where both husband and wife have the power to withdraw funds deposited in a joint account, the power must be exercised in good faith for the mutual benefit of both, and cannot be rightly exercised by the fraudulent withdrawal of the corpus of the funds for the exclusive use of .one for the purpose of depriving the other of any use thereof or title thereto. We have held that the fact an agreement creating an estate by entirety contains the right to withdraw by either husband or wife, *does not destroy the legal effect of the estate.* 'It is a joint deposit with right of survivorship where the certificates are payable to husband or wife, as well as where payable to husband and wife. In either case it is held by entireties.' " (Italics supplied.)

In Klenke's Est. (No. 1), 210 Pa. 572, and in Madden et al. v. Gosztonyi, supra, it was argued that since either husband or wife had the right to withdraw the account, this prevented the deposit from being a tenancy by entireties. The contention was rejected by the Supreme Court.

In the Madden et al. v. Gosztonyi case, supra, the court said (pp. 487, 489):

"Moreover, in answer to the argument that where one spouse can withdraw all the funds it should pre-

vent a tenancy by the entireties from arising, there exist many instances at common law in which one spouse could exercise great control, short of destruction, over the res of the entireties. (Illustrations.)

"Where a deposit is made payable to either spouse, agency or authority exists by implication, and the husband or the wife may, from that authority, withdraw the entire account, but the money thus withdrawn *is impressed with the entirety provision that it is the property of both,* and any one dealing with such specific property as severalty, knowing it belongs to both, must submit to the consequences. However, the bank, acting in good faith, is protected when funds are withdrawn by either."

The relation between a bank and its depositors is that of debtor and creditor. The same relation exists between the obligor and obligee in a bond.

As between husband and wife, only slight evidence of delivery is necessary. The custody of the instant bonds did not exclude an estate by entirety. In Geist v. Robinson, supra, the husband failed to record the wife's signature with the bank, a requisite for any withdrawal.

Had the deposit box been held in the sole name of decedent, it is unlikely that a tax would have been imposed. Snyder's access was taken by the Commonwealth as tantamount to exclusion of the wife therefrom. The manner in which the bond transactions were carried on discloses, in our opinion, an intent to constitute Snyder as agent with access to the box for each and for both.

The principles above quoted are not limited in their application to bank deposits. In Wilbur Trust Co. v. Nadler, 322 Pa. 17, they were applied with respect to mortgage certificates.

For the reasons above stated, we conclude that neither the use of the disjunctive "or" in the regis-

tered title of the bonds, nor the fact that either could cash the bonds, prevented an estate by entireties from arising.

In Evans' Estate, 57 D. & C. 55, United States bonds of series "E", purchased by Henry E. Evans, were issued in the name "Henry E. Evans or Miss Georgina Evans Bevan". Miss Bevan was a niece of the purchaser. The court held the full value of the bonds was subject to transfer inheritance tax "because no apt words were used to create a joint tenancy" and because "the purchaser did not surrender dominion or control over them". The marital relation existing here distinguishes the instant case. The Commonwealth's principal contention is that by reason of the regulations of the United States Treasury Department under which the bonds were issued, no estate by entireties could be created in the bonds.

United States savings bonds are issued in pursuance of acts of Congress by virtue of the authority granted to Congress in article I, sec. 8, cl. 2, of the Constitution of the United States "to borrow money on the credit of the United States".

Article 6, cl. 2, of the Constitution declares:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the contrary notwithstanding."

It must be conceded that the Secretary of the Treasury was authorized to issue such bonds subject to such terms and conditions, including any restrictions on their transfer, "as the Secretary of the Treasury may from time to time prescribe".

Rules and regulations prescribed by administrative bodies and officers and which are adopted pursuant to

authority of an act of Congress, so long as they are reasonably adapted to the enforcement of the act, and are not in conflict with express statutory provisions, have the force and effect of law. See Maryland Casualty Co. v. United States, 251 U. S. 342, 349.

Pursuant to his authority the Secretary of the Treasury, by a formal circular of the Treasury Department, issued the bonds here involved subject to certain regulations therewith promulgated with respect to payment, transfer, etc., of the bonds. Each of the bonds, together with the statutes, Treasury Regulations and circulars, constitutes a valid and binding contract determining the rights of the parties therein. Ownership and title to the instant bonds are controlled by statutes and the aforesaid Treasury Regulations and circulars.

It is unnecessary to here detail the respective regulations in effect pertaining to E bonds and G bonds at the time of purchase and in force on the date of decedent's death. In the respect here material, the regulations are identical to the extent that a bond of neither series could be issued payable jointly to two persons. Both series E and G were subject to the express conditions that a bond registered in the names of two individuals: "During the lives of both co-owners the bond will be paid to either co-owner upon his separate request without requiring the signature of the other co-owner"; "If either co-owner dies without having presented and surrendered the bond for payment . . . the surviving co-owner will be recognized as the sole absolute owner of the bond and payment will be made only to him."

We come now to the principal question involved, viz., in view of the above-quoted regulations, did the wife acquire, *on the date of the purchase*, an estate in the bonds (purchased at the direction of her husband) and issued payable to the husband *or* the wife?

The Commonwealth argues that inasmuch as the husband had the power to surrender the bonds at any time and to apply the proceeds to his separate use, no estate in the wife arose until the death of her husband.

Obviously, the wife's claim of title rests upon the law of Pennsylvania, and concededly she can assert no right thereunder which is in conflict or inconsistent with the pertinent Federal statutes or regulations promulgated thereunder.

The Commonwealth cites Ruben v. Ruben, 95 Pitts. L. J. 65, wherein the Court of Common Pleas of Allegheny County seems to have held that an estate by the entirety is not created by the issuing of a United States savings bond "payable to husband *or* wife", the reason being that the regulations, which supersede the law of Pennsylvania, permit payment to either spouse. In that case the husband cashed the bonds and appropriated the proceeds for his separate use. The proceeding sought a decree that the husband held the proceeds, in its converted form, as a tenant by entirety. The difficulty encountered was that the funds had been converted into United States savings bonds payable solely to the husband. We need not consider whether the court would have reached the same conclusion if the bonds had been converted into some property other than United States savings bonds.

In our opinion, the fact that decedent might have converted the instant bonds to his own use did not prevent the wife from acquiring a title as tenant by the entirety. Her rights, as such, under Pennsylvania law against the United States were superseded by the Federal law to the extent that her rights under the law of Pennsylvania were inconsistent with the Federal law or regulations. The present claim of the wife, in essence, is that she and her husband were coöwners; that the bonds were payable to either dur-

ing the lifetime of both, and that they were payable to the survivor upon the death of the other spouse. Wherein is this claim inconsistent with Federal statute or regulation?

By reason of the Federal law and the contract between the purchaser and the Government, neither spouse could look to the obligor for protection against misappropriation by the other spouse. This circumstance did not prevent an estate by entireties from arising.

In the instant case the passive spouse permitted the other spouse to invest funds in obligations payable to either. This did not constitute a surrender of rights by the passive spouse.

In Madden v. Gosztonyi Savings & Trust Co., supra, numerous cases are cited wherein the court has flatly declared that the fact that an account is payable to either husband *or* wife is not inconsistent with the existence of an estate by the entireties.

Here the Government would have been protected in payment to either spouse. In making payment to either it would be under no duty to consider the rights of the other coöwner, but "where a deposit is made payable to either spouse, agency or authority exists by implication, and the husband or the wife may, from that authority, withdraw the entire account, but the money thus withdrawn *is impressed with the entirety provision* that it is the property of both (italics by the court) and any one dealing with such specific property as severalty, knowing it belongs to both, must submit to consequences. However, the bank acting in good faith, is protected when funds are withdrawn by either": Madden v. Gosztonyi S. & T. Co., supra.

As before stated, the principle is not limited in its application to bank accounts but includes other choses in action: Madden v. Gosztonyi S. & T. Co., supra; Blumner v. Metropolitan Ins. Co., 362 Pa. 7, 11.

We find absolutely no reason for holding that Bertha A. Bowie was not a coöwner from the date the bonds were purchased at the direction of her husband, and received and deposited by their joint agent. The bonds themselves declared that the wife was a coöwner and declare further that upon her husband's death they would be payable solely to the wife. The fact that the law of Pennsylvania presumes that she succeeds to the unlimited title as tenant by the entireties, not as joint tenant, is inconsistent with no Federal statute or regulation pertaining to the bonds.

The tax here imposed is not imposed by Federal authority; the assessment is an effort by an agency of the Commonwealth to fix a liability by virtue of a statute of the Commonwealth of Pennsylvania. There is therefore no sound reason for ignoring a fundamental principle of Pennsylvania law upon the theory of some imagined conflict with Federal law.

In Graham's Estate, 358 Pa. 383, a coöwner of United States war savings bonds resisted payment of transfer inheritance tax assessed against her as the surviving coöwner. Summarized, the contention was:

"The purchase of the bonds is part of the contract between the United States Government and the purchaser; that under the United States Treasury Regulations, Circular No. 530, December 15, 1938, section IX, bonds owned by co-ownership '. . . will be paid to either co-owner . . . upon his individual request . . . and, upon payment to either co-owner, the other person shall cease to have any interest in the bonds. . . .' It is further provided in part (b) of the same section that upon the death òf one coöwner, payment will be made to the *surviving* coöwner at his request."

Somewhat analogous to the contention here, it was argued that the Federal regulations superseded the law of Pennsylvania. The court found no conflict be-

tween the law of Pennsylvania and the Federal regulations.

There is further reason to hold that the instant tax was improperly assessed. In the exercise of its undoubted right to impose a tax upon the succession of the property of a decedent the Commonwealth has always differentiated the assessment with some regard to the intimacy of the relationship between decedent and beneficiary. Originally, a tax was imposed only if the property passed to collaterals or strangers. When a direct tax was later enacted, the rate imposed upon the inheritance to spouse or children was two percent, whereas others were subject to a levy of 10 percent.

The Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, did not deal specifically with the taxability of property held in joint names. The Act of May 16, 1929, P. L. 1795, added paragraph (e) to the then existing law and provided for the assessment upon the death of one of the joint owners. Paragraph (e) imposes a tax upon property "held in the joint names of two or more persons, *except as tenants by the entirety,* or is deposited in banks . . . in the joint names of two or more persons, *except as husband and wife*".

It will be observed that the words "husband and wife" are used only in connection with bank accounts. Was it the legislative intention to increase immunity of bank accounts over other property similarly held? It seems to us that the legislature took notice of the common practice of maintaining bank accounts payable, for convenience, to either husband or wife. The legislature was doubtless aware that there was constantly recurring to the courts the question whether an account so maintained was an estate by entireties. In our opinion the words "held in joint names . . . as husband and wife" was a precaution to insure beyond

doubt the immunity of accounts held by a husband and wife, however entitled.

Use of both phrases, "except as tenants by the entirety" and "except as husband and wife", in the Act of 1929, indicates a clear legislative intent to exonerate property owned jointly by husband and wife.

An amending Act of June 22, 1931, P. L. 690, added a paragraph which requires banks to notify the Department of Revenue of the death of a depositor, where property is deposited in joint names "except by a husband and wife, as tenants by entireties".

Was this more than a restatement of the immunity provided in the Act of 1929?

The act in effect upon date of decedent's death was the Act of 1929, P. L. 1795, as amended by the Act of 1931, P. L. 690.

In the instant assessment, the Commonwealth did not undertake to apply subsection (e) of the Act of 1929, which provides that where property is held in joint names (except as tenants by the entirety) the fractional part of such property taxable shall be determined by dividing the value of the whole property by the number of joint tenants in existence immediately preceding the death of the deceased joint tenant.

Apparently the Commonwealth claimed the wife had acquired no title because the husband had not surrendered custody of the bonds to her. This claim ignores the very sharp distinction between joint tenants and tenants by the entireties. There can be but one possession of an estate by the entireties. (Furthermore, Snyder had authority to give or accept possession on behalf of either or both.) In contemplation of law husband and wife are one, consequently the possession of one is the possession of both: Beihl v. Martin, 236 Pa. 519. The wife's interest arose when the bonds were issued in the names of herself and her husband: Haggerty's Estate, 311 Pa. 503.

"Another incident of holding per tout is that, upon the decease of one of the spouses there is no state inheritance tax. As stated in Berhalter v. Berhalter, 315 Pa. 225, 227: 'The interest of the surviving tenant in the whole is not increased by the extinguishment of the interest of the other by death, but rather is freed of the restraints imposed upon it by the presence of an interest of like degree and kind which existed while both lived.' See Leach's Est., 282 Pa. 545, 549; Haggerty's Est., 311 Pa. 503; Lowry's Est., 314 Pa. 518; In re: Est. of Mary R. Vandergrift, 105 Pa. Superior Ct. 293. While ordinary joint tenancies have more recently been specifically subjected to inheritance tax by the legislature, the exemption of tenancies by entireties continues to be recognized: Act of June 20, 1919, P. L. 521, Art. 1, section 1, as amended June 22, 1931, P. L. 690, section 2, and July 14, 1936, P. L. 44, section 2": Madden et al. v. Gosztonyi S. & T. Co., supra (note p. 482).

The latest bond purchases were made several years prior to decedent's death. If decedent had had the bonds issued payable to himself and to Snyder, and thereafter placed in the box under the instant circumstances, upon decedent's death Snyder would have been required to pay a tax upon only one half of the value, but since decedent included his wife as coöwner (rather than a stranger), the Commonwealth undertakes to impose a tax upon the full value. Such an anomalous result cannot be sustained by either law or reason.

Kleinschmidt Estate, 362 Pa. 353, presented the question whether deceased husband's interest in certain stocks held in the names of husband, wife, and daughter as "joint tenants with the right of survivorship, and not as tenants in common", passed to the wife as the surviving tenant by entirety immune from transfer inheritance tax. The court decided, inter alia, that there could not be a pure estate by the entireties

where a third person was a coöwner, hence that the interest passing to the wife was subject to the tax.

Influenced presumably by the decision in Kleinschmidt Estate, the legislature by the Act of 1949, P. L. 1083, struck the words "tenants by the entirety" from the then existing law and substituted the words "as husband and wife". The only change in phraseology effected by the amendment of 1949 was the rejection of the words "tenants by the entirety" and adoption of the words "as husband and wife", to describe property exempt from transfer inheritance tax. It seems clear enough that the 1949 amendment did not increase the immunity of husband and wife but only clarified the original legislative intent.

Haggerty's Estate, 311 Pa. 503, held that upon the death of one joint tenant, with express right of survivorship, no property was transferred to the survivor, consequently no tax was imposed thereon by the Act of 1929, P. L. 1795. This case is cited for the proposition that the tax is limited exactly to the property described in the statute which imposes the tax.

The Act of 1936, P. L. 44, thereafter imposed a tax upon the accrual to the survivor of the enjoyment of the whole property.

In Stone's Estate, 35 D. & C. 615, cited as a basis for the decision (without an opinion), in Kelly's Estate, 336 Pa. 305, it was argued that a tax upon joint estates was arbitrary and unconstitutional since estates by the entirety are exempted. The court declared,

"From time immemorial there has been a distinction between joint estates and estates by the entirety which can be held only by husband and wife and who probably cannot hold property in their joint names in any other way. See Madden et al. v. Gosztonyi S. & T. Co., 331 Pa. 476, 480."

Appellants do not challenge the power of the legislature to impose a tax upon rights to jointly held prop-

erty accruing to a husband or wife upon the death of the other spouse. They contend, and we think rightly, that the legislature never exercised its right to impose such a tax. Not only was no tax imposed thereon by succeeding statutes but an exemption thereof was expressly and clearly declared in each pertinent statute.

If we should be in error with respect to the taxability of the bonds purchased at the direction of decedent, there is no justification for imposition of the tax on the bonds purchased at the direction of the wife with her own funds.

In the hearing before us, perhaps appellants should have identified the bonds purchased by the wife. It may be that they were deterred from so doing lest that would seem to concede the taxability of those purchased by the husband. In any event, an opportunity should be afforded appellants to produce that identification if any part of the bonds are eventually taxed.

## Order

And now, July 19, 1950, for the reasons above set forth this appeal is sustained, and it is ordered, adjudged and decreed that the assessment of transfer inheritance tax upon United States savings bonds, series G, of the par value of $12,000, and upon United States savings bonds, series E of the appraised value of $2,965.25, in the estate of Matthew W. Bowie, deceased, be stricken off; said bonds being more particularly identified as follows:

Series G

Matthew W. Bowie or Mrs. Bertha Ann Bowie

| | | |
|---|---|---|
| June 24, 1944 | M2932978G | 1000.00 |
| June 24, 1944 | M2932977G | 1000.00 |
| Dec. 5, 1944 | M3216659G | 1000.00 |
| Dec. 5, 1944 | M3216660G | 1000.00 |
| May 22, 1945 | D1815891G | 500.00 |
| Nov. 1945 | M4063183G | 1000.00 |
| Nov. 1945 | M4063184G | 1000.00 |
| Nov. 1945 | M4063185G | 1000.00 |

Series E
Matthew W. Bowie or Mrs. Bertha Ann Bowie

| | | | |
|---|---|---|---|
| Jan. | 12, 1942 | L172907007E | 50.00 |
| Feb. | 2, 1942 | L172907008E | 50.00 |
| Mar. | 4, 1942 | L172907009E | 50.00 |
| Mar. | 4, 1942 | L172907010E | 50.00 |
| Apr. | 9, 1942 | L172907011E | 50.00 |
| May | 8, 1942 | L172907012E | 50.00 |
| May | 8, 1942 | L172907013E | 50.00 |
| June | 2, 1942 | L172907014E | 50.00 |
| June | 30, 1942 | L172907015E | 50.00 |
| July | 1, 1942 | L172907016E | 50.00 |
| Aug. | 7, 1942 | L172907017E | 50.00 |
| Sept. | 1, 1942 | L172907018E | 50.00 |
| Sept. | 24, 1942 | L172907019E | 50.00 |
| Oct. | 1, 1942 | L172907020E | 50.00 |
| Nov. | 4, 1942 | Q845333700E | 25.00 |
| Nov. | 4, 1942 | L172907021E | 50.00 |
| Dec. | 1, 1942 | Q845333701E | 25.00 |
| Dec. | 1, 1942 | L172907022E | 50.00 |
| Dec. | 31, 1942 | L172907023E | 50.00 |
| Jan. | 29, 1943 | Q845333702E | 25.00 |
| Feb. | 2, 1943 | L172907024E | 50.00 |
| Mar. | 1, 1943 | L172907025E | 50.00 |
| Apr. | 12, 1943 | L172907026E | 50.00 |
| Oct. | 4, 1943 | L172907027E | 50.00 |
| Oct. | 4, 1943 | L172907028E | 50.00 |
| Nov. | 6, 1943 | L172907029E | 50.00 |
| Feb. | 2, 1944 | D18624536E | 500.00 |

Series G
Matthew Bowie or Mrs. Bertha A. Bowie

| | | |
|---|---|---|
| April, 1943 | M6387662G | 1000.00 |
| Feb. 1944 | D2825318G | 500.00 |

Series E
Mrs. Bertha A. Bowie or Matthew W. Bowie

| | | |
|---|---|---|
| Nov. 14, 1945 | D13691947E | 500.00 |
| Nov. 14, 1945 | D13691948E | 500.00 |
| Nov. 14, 1945 | D13691949E | 500.00 |
| Nov. 14, 1945 | D13691950E | 500.00 |

Series G
Mrs. Bertha A. Bowie or Matthew W. Bowie

| | | |
|---|---|---|
| Feb. 14, 1944 | D931384G | 500.00 |
| June 24, 1944 | D1465051G | 500.00 |
| Dec. 5, 1944 | D1597016G | 500.00 |
| Dec. 5, 1944 | M3216658G | 1000.00 |
| May 22, 1945 | D1815890G | 500.00 |