[No. 1441. Decided January 14, 1895.]

WILLIAM A. MABIE, *Appellant v.* LEMUEL C. WHITTAKER ET AL., *Respondents.*

COMMUNITY LAND—POWER OF HUSBAND TO DEED—RETROACTIVE STATUTE—EJECTMENT.

Real property acquired by the community under the provisions of the law of 1869, which gave the husband power to convey the entire title by his separate deed, could not be conveyed away by the husband after his wife's death, so as to pass her interest, while the law of 1871 (Laws, p. 73, § 22), declaring that one-half the community property should belong to the wife and her heirs forever, was in force. (HOYT, J., dissents.)

The legislature has power to change the law of descent as to community lands and make the same applicable to lands previously acquired.

A tenant in common can maintain ejectment against a co-tenant in possession who disputes his right.

*Appeal from Superior Court, Thurston County.*

*Whitson & Parker* and *J. F. Van Name*, for appellant.

*W. I. Agnew* and *B. F. Dennison*, for respondents.

The opinion of the court was delivered by

SCOTT, J.—In December, 1864, Andrew E. Mabie and Emeline Z. Huntington were married in Washington Territory and lived together therein as husband and wife until August 31, 1872, when she died intestate and no administration was had.  They were the parents of the plaintiff, and there was one other child, the issue of said marriage, also living.  On the 10th day of August, 1871, one Tilley and his wife, being the owners, conveyed the premises described in the complaint, consisting of 1,862.60-100 acres of land in Thurston county, to Andrew E. Mabie, who held the same with his wife until her death.  On October 27, 1874, after the death of his wife, Andrew Mabie executed a deed purporting to convey all of said land to one Hallett, and the defendants claim by mesne conveyances through him. The plaintiff is twenty-five years old, and instituted this action in May, 1892, claiming as an heir of his mother. The form of the action is ejectment, the plaintiff demanding to be let into possession with defendants, as a tenant in common, and for the rents and profits, and damages for cutting and removing timber.  After the plaintiff had introduced evidence in support of his case and rested, the court granted a motion by the defendants for a non-suit, on the ground that the deed of Andrew Mabie conveyed the entire tract and cut off whatever interest the plaintiff inherited therein, if any, from his mother, and this appeal is prosecuted therefrom.

The deed from Tilley and wife to Andrew Mabie was executed while the statutes of 1869, relating to common property, were in force, and the land became the common or community property of Mabie and wife thereunder. Section 9 of this act (Laws 1869, p. 320, Abb. Real Prop. Stat., p.

472), empowered the husband to convey the entire title to
such land by his separate deed, but subsequently the legis-
lature passed another act (Laws 1871, p. 70, Abb. Real Prop.
Stat., p. 476), which was in force at the time Mrs. Mabie
died in 1872, and § 12 of this act reads as follows:

"The husband shall have the management of all the com-
mon property, but shall have no right to sell or encumber
real estate except he shall be joined in the sale or encumb-
rance by the wife; but he may sell or encumber any personal
common property without being joined by the wife."

One of the contentions of the respondents is that, what-
ever the nature of the wife's interest in the land was, the
right of Mabie to convey the entire title could not be taken
away by legislation subsequent to the time it was acquired
by him. But leaving out of consideration all question as to
whether he could only exercise such right while his wife
was living, and could not convey the entire title under the
former law after her death and cut off her heirs, we think
the subsequent act took away his power to do so. It was
immaterial whether the record title to the community lands
stood in the name of the husband or of the wife, or of both
of them, when considered with reference to the power of the
legislature to authorize either or both of them to convey.
The legislature could as well have provided that the wife
could convey as the husband, and if it had power to say that
either could dispose of the community interest of the other,
it could say that neither could do so. Changing the manner
of the conveyance did not alter the status of ownership.
It could not make the interest of either spouse in community
lands greater or less. Furthermore, prior to the conveyance
to Hallett, the community in question had been dissolved by
the death of the wife, and at the time of her death the law
of 1871, relating to the descent of community property, was
in force. Section 22, p. 73 (Abb. Real Prop. Stat., p. 478),
provided that:

"The common property being partnership property, the
wife's share shall be one-half thereof and shall be hers and
her heirs forever; and her share of the common property

may be increased so as to be more than one-half, by the wife's compliance with the provisions of section five of this act.''

Appellant claims that upon the death of Mrs. Mabie an interest in said lands vested in him, and that he became a tenant in common with his father and sister.   In addition to the claim that Mabie could and did convey the entire title to Hallett, in consequence of having that right when the land was acquired, which we have above discussed and which will be further considered on a different ground, it is contended by the respondents that Mabie and wife held the land in question as joint tenants with the right of survivorship, and, consequently, upon her death, that he became the sole owner.   The act of 1869 did not fix the status of such property, other than to declare it to be common property, and made no provision for its descent.   Nor was there, at that time, nor for some time thereafter, any express legislative recognition of estates in joint tenancy.   But the claim is founded upon the common law which was in force to a greater or less extent in the territory, and upon the following statute approved in December, 1885, viz.:

"Section 1.   That if partition be not made between joint tenants, the parts of those who die first shall not accrue to the survivors, but descend, or pass by devise, and shall be subject to debts and other legal charges, or transmissable to executors or administrators, and be considered, to every intent and purpose, in the same view as if such deceased joint-tenants had been tenants in common; *provided*, that community property shall not be affected by this act.

Sec. 2.   That all acts and parts of acts in conflict with this act be and are hereby repealed.''   Laws 1885–6, p. 165.

We cannot concede the force of this indirect recognition of joint tenancy as applied to community lands which the respondents contend it should have.   The reference thereto in this statute is not the first instance of the employment of loose or inapplicable expressions with regard to former or existing laws in our legislation; nor do we think such defective statutes are peculiar to this state and territory, as it is something liable to occur in any legislation, owing to the

fact that law-making bodies usually do not and cannot well have a full appreciation and understanding of the various laws in force or enacted by them, in all their bearings.

It is evident that a holding that the right of survivorship did obtain with reference to community lands would over-turn and nullify the express declarations of the statute above set forth, relating to the status, ownership and descent thereof, passed in 1871 (§ 22, *supra*).

The act of 1869 and this act declared that all property so acquired should be common property. The section referred to declared that the common property was partnership property. Section 25 provided that, "The rights of all married persons now living in this territory, and of all who shall hereafter live in this territory, shall be governed by this act." We have here the clearly manifested intent of the legislature not only to define what the community estate was, namely, a partnership, but providing for descent thereof and making it applicable to persons then living in the territory as well as those thereafter to come; to community estates then existing as well as those to be acquired. The statute of 1871 did not undertake to divest any right which had become vested. Mabie receiving this conveyance under the act of 1869 thereby became the owner of an undivided one-half interest in the land, and his wife thereby became the owner of the other half. Her right was as much a vested right as his. Under the weight of authority the legislature had power to change the law of descent and could take away the right of survivorship as to estates in joint tenancy, and make the same applicable to lands already acquired. Cooley, Const. Lim. (5th ed.), 440, 441. Freeman, Co-tenancy and Part., § 36, and cases cited by each; also *Miller v. Dennett*, 6 N. H. 109.

Section 22 aforesaid is substantially a statute of descent. It has the technical and apt words of such a statute : "Hers and her heirs forever," which indicate the legislative intent. There was also a general statute of descent in force which could more logically be applied to community estates.

than could the doctrine of joint tenancy.  Laws 1862, p. 261, Abb. Real Prop. Stat., 375–378.

Subsequently another act was passed to regulate the descent of real property.  Laws 1875, p. 55.  Section 2 provided: "Upon the death of husband and wife, the whole of the community property, subject to the community debts, shall go to the survivor."  This statute continued in force until November, 1879, when an act was passed (Laws 1879, p. 77), § 13 of which was as follows:

"In case no testamentary disposition shall have been made by the deceased husband or wife of his or her half of the community property, it shall descend equally to the legitimate issue of his, her or their bodies.  If there be no issue of said deceased living, or none of their representatives living, then the said community property shall all pass to the survivor subject to the community debts, and to the exclusion of collateral heirs, the family allowance and the charges and expenses of administration."

In neither of these acts were community lands referred to as being held in joint tenancy, and the only reference of the kind thereto is contained in the act aforesaid, passed in 1885, subsequent to all of them.

A partnership is not a joint tenancy.  Parsons on Partnership, at page 2 (3d ed.), says:

"Thus partnership has been compared to tenancy in common, and also to joint tenancy; and has been said to be one or the other of these, modified in certain ways.  This was the view taken in all the early books.  But this is no more true than that tenancy in common or joint tenancy is a modified partnership.  The three things are essentially distinct.  They all have the element of joint ownership of property, but in all other respects are different and independent; and the law of each must be sought for in itself.  *  *  *  And as to joint tenancy, not only may all of the four unities— title, interest, time and possession—every one of which is essential to joint tenancy, be absent from partnership, but, besides this technical difference, the substantial characteristic of the joint tenancy, which is the right of survivorship, is wholly wanting in fact in partnership, for it exists there only in form and as a mere trust for the purpose of settlement."

"The fundamental idea of the community system is that marriage makes the man and woman partners, and that therefore all property acquired after marriage is community property." Stewart, Husband and Wife, § 317.

See, also: *De Blane v. Lynch*, 23 Tex. 25; *In re Buchanan's Estate*, 8 Cal. 507; *Wilkinson v. Wilkinson*, 20 Tex. 237; *Cartwright v. Hollis*, 5 Tex. 152.

"The central idea of the community system is that marriage creates a partnership in property between husband and wife, and that all property resulting from the labor of both or either of them, and all property vesting in them or either of them, except by gift, devise, bequest or descent, inures to the benefit of both of them; and though community property has not all the incidents of partnership property, it has many of them, and is commonly spoken of as partnership property." 3 Am. & Eng. Enc. Law, p. 350.

The act of 1871, in addition to declaring such property partnership property, provided for an increase of the wife's interest to more than one-half. This was incompatible with the doctrine that such estates were held in joint tenancy. But even if they were, by providing for the descent of her interest, his right of succession as the survivor was cut off. We know of no instance, judicial or otherwise, where such doctrine of joint tenancy has been recognized or applied in the history of the state and territory, and none has been called to our attention. We are of the opinion that the universal belief and course of acting has been contrary thereto, and that the right of taking by survivorship has at no time existed as to community lands here, except under the statute of 1875, providing for such descent.

A good many cases have been cited by the respondents holding that a purchaser of the legal title to lands without notice of any equities therein, will take the entire title, and we presume this will not be disputed, as a general proposition. But some of them from California and Texas go further, and hold in effect that the wife's interest in community lands is an equitable interest only, and that her heirs would be cut off by such a conveyance. But in both of these states the disposition of community lands rested in the

husband and he could convey the same to satisfy the community debts after her death. In some instances the record title is spoken of as the legal title, but this can be true only in a qualified sense. · A deed of lands under the conditions specified in the statute vested the ownership in the community, no matter which spouse was named as grantee in the deed, and the title of one spouse therein was a legal title as well as that of the other. It may be said that the title or interest of either spouse therein separately was only an equitable one. But how is this material in the face of the statute in force when the deed by Andrew Mabie was executed, which declared, without regard to the nature of the ownership of either spouse, that the husband should have no right to sell or encumber community real estate except he be joined in the sale or encumbrance by the wife?

It might well be that the legal title, when considered with reference to innocent purchasers, would be regarded as resting in the one who had the record or written evidence of title, and that a conveyance from such spouse to an innocent purchaser would transfer the entire estate of the community, and the same rule might be recognized under the circumstances of this case, perhaps, after the death of the wife, if it would obtain before ; but it cannot obtain at all without directly nullifying the statute which said he should have no "right" to sell, and "right" in the sense used there meant power. By executing such a deed the husband subjected himself to no penalty, and there was no way of enforcing the statute, if the deed was to be recognized as valid. This same section ( 12, *supra* ), provided that he might sell the community personal property without her participation. A similar law is in force at this time, and it has always been the settled belief that the deed of both husband and wife is necessary to pass the title to community lands under these statutes. In fact, it could not have been otherwise. There is no decision of the supreme court of the state or territory to the contrary, and there has been none by any inferior court that we are aware of, unless the decision of the case before us was upon that ground. It is true, in *Sadler v.*

*Niesz*, 5 Wash. 182 (31 Pac. 630), we in effect held the wife estopped under the circumstances of that case from asserting a claim to community lands deeded by the husband, but that in no wise contravenes the doctrine above stated. In this connection we call attention to : *Holyoke v. Jackson*, 3 Wash. T. 235 ( 3 Pac. 841) ; *Hill v. Young*, 7 Wash. 33 ( 34 Pac. 144), and *Adams v. Black*, 6 Wash. 528 (33 Pac. 1074), as some of the cases decided in this state and territory bearing upon the questions before us.

We cannot overturn the statutes, nor the settled law of the state, to meet the hardships of a particular case, much as we would like to avert them. If Andrew Mabie could not convey this land during the life time of his wife, he could convey nothing more than his interest therein after her death. Upon her death her interest in these lands vested in her heirs, and the plaintiff was one of them. What the extent of the interest was which the plaintiff succeeded to, or whether the husband took a share of his wife's estate also as one of her heirs, we are not called upon now to determine, as the question has not been presented or argued. Furthermore, as Andrew Mabie received a valuable consideration for this conveyance, which was understood by the parties to be for the whole tract, it may be that the plaintiff, in case he inherited or received anything from his father's estate, can be called upon to account thereon. But these questions must await the future disposition of the case, or be disposed of therein.

It is further contended by the respondents that the judgment of non-suit was rightly granted, because ejectment cannot be maintained. But we think the law is well settled that a tenant in common can maintain ejectment against a co-tenant in possession who disputes his right. Freeman, Cotenancy and Partition (2d ed.), §§ 248, 290 ; *University v. Reynolds' Ex'r.*, 3 Vt. 542 (23 Am. Dec. 234); *Gale v. Hines*, 17 Fla. 773 ; *Wolfe v. Baxter*, 86 Ga. 705 (13 S. E. 18); *Hancock v. Lopez*, 53 Cal. 362.

And that, if the law were otherwise, this action could be maintained under §§ 529 and 531, Code Proc.

A further point raised by appellant is that the court erred in excluding evidence of the rents and profits, and damages for taking timber beyond six years from the commencement of the action, and we think the point is well taken, as § 534, Code Proc., should be considered with § 124, and the cause of action was saved by reason of the minority of the plaintiff.

Reversed and remanded for a new trial.

DUNBAR, C. J., and ANDERS, J., concur.

HOYT, J. (*dissenting*).—I dissent. In my opinion the act of 1871 did not affect property theretofore acquired. There is no language used in the act which to my mind discloses any such intention on the part of the legislature. In that respect it is entirely different from the other statutes in relation to community property. A statute which introduces a rule as to real property radically different from the one theretofore existing should not be construed to apply to property acquired before its passage unless the language makes clear the intention of the legislature that it should so apply. Before the passage of the act of 1871 the element of common property had been introduced into our statute law but not to such an extent as to greatly affect the holding of property belonging to the husband and wife by either of them. But this act sought to introduce an entirely new condition of things, and to constitute a kind of partnership between the husband and wife in the holding of such property. Hence under the rule above suggested it should be held not to apply to property theretofore acquired unless the language clearly indicates the intention of the legislature to give it such retrospective effect. I find nothing in the act in question to indicate such intention; on the contrary I find language which to my mind indicates an intention to give it effect only as to property thereafter acquired. If I am right in thus construing the act of 1871, the rights of the parties to the property in question must be determined under the law of 1869. Under that law the husband alone could dispose of the common property during

coverture.   Such power, in my opinion, carried with it the right to dispose of such property by the husband after the death of the wife.   In other states similar statutes have been held to confer such authority upon the husband, and so far as I am advised the courts of none of the states having statutes like this now hold to a contrary doctrine.