[No. 31915. *En Banc.* October 30, 1952.]

MABEL C. HOLOHAN, *Appellant,* v. GRACE MELVILLE, *Respondent.*[1]

[1]Reported in 249 P. (2d) 777.

*Royal & Abbott,* for appellant.

*Acheson & Smith,* for respondent.

DONWORTH, J.—Plaintiff brought this action to quiet title in her to an undivided one-fourth interest in two tracts of land, for a partition of the tracts, for a judgment for the value of the use of one of the tracts and for an accounting of moneys received upon a contract of sale of a third tract. An order of default was entered against defendant Nina R.

Bogue. Defendant Grace Melville answered, denying the material allegations of the complaint and praying that the action be dismissed.

The action was tried to the court sitting without a jury. At the conclusion of the trial, the court made findings of fact, drew conclusions therefrom in favor of defendant Melville and entered a judgment of dismissal. Plaintiff has appealed. Defendant Bogue is not a party to this appeal.

The facts of the case are not in dispute. Appellant and defendant Bogue are sisters and the sole heirs at law of Myrtle Jane Reck, who died March 31, 1945. Defendant Bogue was the administratrix of the estate of Miss Reck; the administration of the estate has been closed. The tracts in dispute were not inventoried in the estate.

Respondent and Miss Reck, both spinster school teachers, were close personal friends and lived together in Seattle for approximately twenty-five years until Miss Reck's death in 1945. During this time they purchased together, on contract, a residence in Seattle which they occupied as their home. This tract will hereafter be referred to as the Seattle property. They, also, purchased together another tract of land located in Grays Harbor county, hereafter referred to as the ocean property. The deeds by which they acquired title are not in evidence, but it appears to be conceded by the litigants that both respondent's and Miss Reck's names appear thereon as grantees.

At some time prior to April 14, 1937, respondent and Miss Reck orally agreed that the survivor of them should have complete ownership of these two tracts. On April 14, 1937, they consulted an attorney, who has since ceased active practice of the law, informed him of their oral agreement for survivorship, and requested him to prepare such instruments as were necessary to effectuate their agreement. The attorney thereupon prepared a will which respondent executed and in which she devised all real estate standing in her name to Miss Reck. At the same time, the attorney prepared and Miss Reck executed two quitclaim deeds conveying her interest in the Seattle and ocean properties to

respondent. The two teachers then instructed the attorney to hold the deeds and the will until the death of one of them and then deliver all the instruments to the survivor. This, the attorney did, and, upon Miss Reck's death, the deeds and will were delivered to respondent, who had the deeds recorded.

Subsequent to 1937, respondent and Miss Reck purchased together, on contract, a farm located near Gold Bar, Washington. After the contract had been paid in full, Miss Reck directed that the deed name respondent as the sole grantee, stating as her reason for so doing that she wanted respondent to have title to the property so that it would be respondent's upon her death. Respondent has, since Miss Reck's death, sold the Gold Bar property on contract and is receiving payments thereon.

With reference to the Seattle and ocean properties, the court found that it was agreed between Miss Reck and respondent, and was so understood by the attorney, that delivery of the deeds and the will to him were irrevocable as to each and all of the instruments, but no finding was made as to when Miss Reck intended that title should pass. The court concluded that title to the two properties passed and vested in respondent, subject only to a life estate in Miss Reck as to her one-half interest, at the time the deeds were executed and left with the attorney. The court further concluded that respondent's will of April 14, 1937, was irrevocable during the lifetime of Miss Reck.

Appellant assigns errors to the finding that delivery of the deeds and the will to the attorney was irrevocable and to the two conclusions of law set forth above. Appellant assigns error, also, to the admission of certain evidence. In our view of the case, however, it will not be necessary to discuss the errors claimed in rulings on admission of evidence.

The attorney who drew the instruments of April 14, 1937, testified that the instructions given to him were, substantially, that he was to keep the three instruments together and deliver all of them to the survivor of respondent and Miss Reck. It was also his understanding that the instru-

ments could not be withdrawn during the lifetime of both, except with their mutual consent.

Admittedly, then, if Miss Reck had survived respondent, her deeds would have been returned to her. There would have been, in such event, no delivery of the deeds to respondent. The placing of the deeds with the attorney was a conditional delivery only, *i.e.*, if Miss Reck were the survivor they would be returned to the grantor, but if respondent survived then the deeds were to become effective.

Respondent argues that the agreement between these ladies contemplated an immediate passing of title, not conditioned upon survivorship; that if Miss Reck had survived and reclaimed the deeds (since title had passed to respondent), she would necessarily have had to record the deeds and then could have reacquired her one-half interest along with respondent's one-half interest by virtue of respondent's will. The only defect in this reasoning is that there is no evidence that the mutual agreement contemplated any such circuitous transfer of title.

We need not determine whether it was agreed that the act of depositing the deeds with the attorney should be irrevocable or whether Miss Reck had parted with dominion and control over the deeds, for the only conclusion which can be reached under the facts is that the attorney was not to deliver the deeds to the grantee upon the happening of an event certain to occur in the future (the survival of respondent). He was to deliver the deeds to the grantee only upon a condition, to wit, that the grantee survive the grantor. Thus there was no intention on the part of the grantor to make a presently operative conveyance.

As we said in *Nichols v. Oppermann*, 6 Wash. 618, 34 Pac. 162:

"To constitute a deed there must be a delivery to the grantee personally or to some third person for him. A deposit of a deed with a third person to be delivered to the grantee upon the happening of some future *certain* event has been held sufficient to constitute the deed an escrow, and control of it in such a case has passed out of the grantor's hands. But where the happening of the event is

uncertain or where the grantor retains or reserves control over the instrument, it is not an escrow."

In *Bloor v. Bloor,* 105 Wash. 110, 177 Pac. 722, where we assumed, for the sole purpose of considering another question, that under the similar facts of that case there had been an absolute delivery of the deeds there in question, we said:

"It is fundamental that a deed will not operate as a conveyance unless there is a present intention to part with the title, although possession may be withheld for a time certain or during the lifetime of the grantor."

██ Where deeds are delivered into escrow under an agreement that they shall be delivered to the grantee after the death of the grantor, but subject to the condition that if the grantor should survive the grantee they shall be returned to the grantor, there can be no intention of the grantor that they should presently convey title. Such a delivery is not absolute, but conditional, and no title is intended to be passed until the grantor's death. Under such circumstances, the deeds are testamentary in character. *In re Edwall's Estate,* 75 Wash. 391, 134 Pac. 1041; *Stone v. Daily,* 181 Cal. 571, 185 Pac. 665; *Leatherman v. Abrams,* 86 Ohio App. 149, 90 N. E. (2d) 402. For failure to comply with the requirements of the statute of wills, the deeds are abortive attempts to pass title to property at death.

Respondent cites a number of our decisions, including *Swingley v. Daniels,* 123 Wash. 409, 212 Pac. 729, in support of her argument that there was an oral contract to devise land which was executed on her part when she left her will of April 14, 1937, with the attorney. In the *Swingley* case, however, the deeds involved were actually· delivered. Neither it nor the other cases relied upon are in point.

Respondent relies, also, upon a number of our decisions beginning with *Matson v. Johnson,* 48 Wash. 256, 93 Pac. 324, and *Maxwell v. Harper,* 51 Wash. 351, 98 Pac. 756, wherein we have held that delivery of a deed to a third person for delivery to the grantee upon death of the grantor was effective to pass title. We have upheld such deeds, however, only when it has been proved that the grantor intended that title should pass presently. There is no such proof here.

We, therefore, conclude that the court erred in drawing its conclusion of law that title to the two tracts vested in respondent, subject to a life estate in Miss Reck as to her one-half interest, at the time the deeds were left with the attorney.

Respondent urges, however, that her mutual agreement with Miss Reck that the survivor should take all the real property was effective to establish a joint tenancy between them; that a joint tenancy with the right of survivorship may be established by contract, citing *In re Ivers' Estate,* 4 Wn. (2d) 477, 104 P. (2d) 467, wherein we gave effect to a contract between husband and wife for joint ownership with right of survivorship of community funds in a "joint" bank account. We shall review this contention.

In 1885, there was enacted "AN ACT TO ABOLISH THE RIGHT OF SURVIVORSHIP IN ESTATES HELD IN JOINT TENANCY," Laws of 1885, p. 165 (Rem. Rev. Stat., § 1344; *cf.* RCW 11.04.070), which reads as follows:

"*Be it enacted by the Legislative Assembly of the Territory of Washington:*

"Section 1. That if partition be not made between joint tenants, the parts of those who die first shall not accrue to the survivors, but descend, or pass by devise, and shall be subject to debts and other legal charges, or transmissible to executors or administrators, and be considered, to every intent and purpose, in the same view as if such deceased joint-tenants had been tenants in common, *provided,* that community property shall not be affected by this act."

This court in a number of cases has stated or implied that the statute of 1885 (Rem. Rev. Stat., § 1344) abrogated the doctrine of survivorship as an incident of joint tenancies. *Mabie v. Whittaker,* 10 Wash. 656, 39 Pac. 172; *Brownfield v. Holland,* 63 Wash. 86, 114 Pac. 890; *Halverstadt v. Estus,* 160 Wash. 390, 295 Pac. 175; *Winner v. Carroll,* 169 Wash. 208, 13 P. (2d) 450; *In re Peterson's Estate,* 182 Wash. 29, 45 P. (2d) 45; *Nelson v. Olympia Federal Sav. & Loan Ass'n,* 193 Wash. 222, 74 P. (2d) 1019; *In re Ivers' Estate, supra; Tacoma Sav. & Loan Ass'n v. Nadham,* 14 Wn. (2d) 576, 128 P. (2d) 982.

The legislature has considered it necessary to enact three special statutes reviving the right of survivorship in respect to joint bank accounts: Laws of 1929, chapter 123, § 2, p. 280 (Rem. Rev. Stat., § 3348; *cf.* RCW 32.12.030), (mutual savings banks); Laws of 1933, chapter 183, § 41, p. 729 (Rem. Rev. Stat. (Sup.), § 3717-41; repealed, Laws of 1945, chapter 235, p. 655; see RCW 33.20.030), (building and loan associations); Laws of 1951, chapter 18, § 1, p. 36 (*cf.* RCW 30.20-.015), (banks and trust companies).

Professor Ivan C. Rutledge, in his article on "Joint Tenancy in Washington Bank Accounts" (26 Wash. L. Rev. 116), commented on Rem. Rev. Stat., § 1344 [P.P.C. § 681-1], as follows:

"In Washington, tenancy by the entireties is superseded by the community property system, and joint tenancy has in practical effect been converted into tenancy in common by the statutory provision that 'if partition be not made between joint tenants, the parts of those who die first shall . . . descend, or pass by devise, and shall be subject to debts . . . and be considered, to every intent and purpose, in the same view as if such deceased joint tenants had been tenants in common, provided, that community property shall not be affected by this act.' "

Because of the widely accepted interpretation of this statute by lawyers, judges, and legislators, and the generally entertained views as to its effect on a state of facts such as is presented in this case, we feel compelled to investigate its history and antecedents at some length to test the accuracy of the statements contained in the cases above referred to, to the effect that the right of survivorship between joint tenants as an incident of such relationship has been abolished in this state.

Joint tenancy, distinguished by its grand incident of survivorship, was a favorite of the common law, and no special words or limitations were necessary to call it into being. A grant or devise to A and B, without more, was presumed to be to them as joint tenants with right of survivorship. Freeman, Cotenancy and Partition (2nd ed.) 71, § 18; Tiffany, Real Property (3d ed.) 201, § 421.

Joint tenancy has, however, been regarded with disfavor in the United States, and in the late 1700's and early 1800's most states enacted statutes limiting or abrogating it. These statutes were of three general types: (1) those purporting to abolish joint tenancy; (2) those stating that a grant or devise to two or more shall be deemed to create as between them the legal relationship of tenants in common unless it be expressly provided in the instrument that they take as joint tenants, or unless it manifestly appears from the tenor of the instrument that a joint tenancy or right of survivorship was intended; (3) those providing that at the death of one joint tenant his moiety should not accrue to the surviving joint tenant or tenants, but should descend or pass by devise. Freeman, Cotenancy and Partition (2nd ed.) 84, § 35; Kent's Commentaries (13th ed.) 362, 388. Our statute (Rem. Rev. Stat., § 1344) is of this third type.

Its forerunner appears to have been first enacted in Virginia and Kentucky in 1786, beginning with the familiar words, "if partition be not made between joint tenants. . . ."

In both states, it has since been amended so that their present statutes fall into the second class described above. Statutes similar to ours were enacted in South Carolina (1791), North Carolina and Tennessee (1784).

In 1812, Pennsylvania adopted, with slight changes, the Virginia statute of 1786. This 1812 act (Title 20, § 121, Purdon's Pa. Stat. Anno. Perm. ed.), which is almost identical with our statute, has remained as the law of Pennsylvania to date. The Pennsylvania act was adopted, again with slight changes, in Illinois in 1821. This Illinois act (since repealed) reads almost exactly as does our statute and appears to be the source from which ours was taken. Its construction by the Illinois court, however, was limited by reason of another statute enacted in 1825. See *Mette v. Feltgen,* 148 Ill. 357, 27 N. E. 911, reversed on rehearing, 36 N. E. 81.

The same or similar acts abolishing the right of survivorship as an incident of joint tenancy have been enacted in Alabama, Kansas and Texas.

The question arises: May the right of survivorship exist in estates held in joint tenancy notwithstanding the language of our statute?

It has uniformly been held in states having the same or a similar statute that where it appears that the intention was to create an estate in land with the right of survivorship, that intention would be given effect by the courts. *Withers v. Barnes,* 95 Kan. 798, 149 Pac. 691; *Chandler v. Kountze,* 130 S. W. (2d) (Tex. Civ. App.) 327; *McLeroy v. McLeroy,* 163 Tenn. 124, 40 S. W. (2d) 1027; *Burton v. Cahill,* 192 N. C. 505, 135 S. E. 332 (where the statute has been held to be applicable to estates of inheritance only); *Truesdell v. White,* 13 Bush 616, 76 Ky. 616; *Redemptorist Fathers v. Lawler,* 205 Pa. 24, 54 Atl. 487. See, also, *Erickson v. Erickson,* 167 Ore. 1, 115 P. (2d) 172. The cited cases were all decided on their own facts and some, it is true, were decided on theories other than that of joint tenancy.

It is in Pennsylvania that the statute, which is almost identical with ours, has been most thoroughly construed, and we turn, therefore, to a consideration of the decisions in that jurisdiction.

In *Bambaugh v. Bambaugh,* 11 Serg. & Rawles 190 (Pa. 1824), it was held that a deed granting land to A and B, and to their heirs and assigns, was a grant to A and B as tenants in common, irrespective of statute. In discussing the joint tenancy statute and holding it to be constitutional, the supreme court said:

"If there were any joint tenants who desired the chance of survivorship, they might have it, by an agreement for that purpose."

In *Lentz v. Lentz,* 2 Phil. 117 (Pa. 1856-57), the district court of Philadelphia county, in construing a will wherein land was devised to A and B so long as they should remain single, the land to be sold upon their death or marriage and the proceeds divided among named children, said:

"There may be some room for doubt whether the Act, which speaks throughout of the share of the deceased as a continuing interest, and provides for its descent or transfer to heirs, executors and administrators, and its liability to

the charge of debts, was meant to apply to joint estates for life, where nothing is given which can descend, or in any way inure as assets after death, and where the extinction of the right of survivorship, deprives the survivor of a benefit, without conferring what it takes from him, on those who claim under him, and thus in effect curtails the estate granted, for the benefit of the grantor and his heirs. Be this as it may, there is no doubt, that the express intent of the testator may still confer an estate upon two for their joint lives, in such wise, that the share of the person first deceased, shall inure on his death for the benefit of the survivor. And it is equally plain, that if this can be done by express words, it may equally result from an implication pervading the whole will, and clearly deducible from the spirit of its provisions. The object of the Act was to cut off survivorship *by operation of law*, aside from or contrary to the meaning of the donor, and not to restrain or preclude any direction, which he may think fit to impress on the transmission of his property, within the limits prescribed by the law of perpetuities." (Italics ours.)

In *Arnold v. Jack's Executors*, 24 Pa. 57 (1854), a leading case, where land was devised to A, B and C as joint tenants and to the survivors and survivor of them, and the heirs of said survivor, the Pennsylvania supreme court said:

"It is not pretended that there is any prohibition either in the statute or common law against devising an estate for life to two or more, with remainder in fee to the survivor; but it is alleged that the devise here was to the three brothers as *joint-tenants*, and that by the Act of 31st March, 1812, the '*jus accrescendi*,' or right of survivorship in joint-tenancy is abolished; and that the limitation in the will to the survivors referred to those *who survived the testator*, and not to an indefinite survivorship.

"It is a question worthy of consideration whether the provisions of the Act of 1812 apply to a joint-tenancy created by express words in a devise, or whether the operation of the Act should not be confined to those technical joint-tenancies arising from the unities of '*time, title, interest, and possession;*' but conceding that the right of survivorship, as an incident of a joint-tenency, no matter how created, is gone, it by no means follows that this right may not be expressly given either by a devise in a will or by grant in a deed of conveyance. *It may cease to exist as an incident, and yet be legally created as a principal.* That it was created

in the will under consideration is apparent when we consider the whole of the devise. Had the testator merely given the estate to his brothers as joint-tenants, it may be that the Act of 1812 would have excluded the right of survivorship. Had it been devised simply to the three, the survivors or the survivor of them, it is probable that its true construction would have referred the time of survivorship to the death of the testator; but when we find that the devise is to the three brothers expressly as 'joint-tenants, and the survivors and survivor of them, and the heirs of said survivor,['] and that the right to transfer depends upon the assent of all, we cannot doubt but that the ultimate survivor was finally to be the recipient of the entire estate." (Last italics ours.)

The effect of these decisions, particularly the latter one, would seem to be as follows: The common-law technical joint tenancy, which arises solely from the existence of the four unities of time, title, interest, and possession, is within the scope of the statute. The right of survivorship as an incident of a technical joint tenancy is abolished, but the statute is not intended to bar joint tenancy and the attendant right of survivorship where it expressly appears from the words of the will or deed that a joint tenancy or survivorship was intended. The result reached by the Pennsylvania courts is, therefore, the same as that arrived at under statutes existing in a majority of the states which provide, in effect, that a deed or devise to A and B shall be deemed to be to them as tenants in common unless a contrary intention is expressly stated in the instrument.

In *Kennedy's Appeal*, 60 Pa. 511, the court rejected the contention that where a devise was by name to A, B and C, and A predeceased the testatrix, B and C took the entire devise. The court there said:

"In other words, it is said we must continue to interpret the devise to create a joint tenancy with the *jus accrescendi* up to the instant of the testator's death, although then, when the will takes effect, the act *eo instanti* cuts off the survivorship and turns the estate into a tenancy in common. The opinion in *Beeson v. Miller* merely gave the conclusion of the Court and not its reasons, and we are, therefore, asked to recede from it. But the reasons prevailing to make the decision induce us to adhere to it. The rule pre-existing the

Act of 1812, which interpreted such a devise to be a joint tenancy, was followed by survivorship, and so long as survivorship attended joint tenancy, the rule and the consequence were consonant. But when survivorship ceased to attend joint tenancy, the rule of interpretation itself must cease to produce that result whenever the survivorship was not within the contemplation of the testator. It is not a rule of policy to be favored, but *cessante ratione cessat et ipse lex*. It is very evident that in a devise to three persons singled out by name, the testator means that each shall have his own share. He expects they will survive him. If he really thought he would survive the devisee, he would scarcely provide for him, or if he did, he would provide for the contingency also. If, therefore, he has made no provision for the death of any of them, because not contemplating that contingency, why should a rule of interpretation conferring survivorship and belonging to an antecedent state of the law, by an unexpected death, vest by survivorship an estate not contemplated or intended to be conferred by the testator? To suffer such a rule to survive its purpose, is to permit it to create estates where none were devised, and to violate the right of disposition by imputing an intention where none exists.

"The operation of the rule is confined to the period between the making of the will and the death of the testator. During this interval the will is inoperative, while the testator does nothing to change it. If the objects remain at his death the same as when he distributed his estate by the will, it vests the estate in them precisely as he intended: to each his own share, and they take as tenants in common under the operation of the Act of 1812. Then on what principle of propriety, or of correct interpretation, if one, by death, passes from beneath the will, shall the estate intended for him only, devolve on another to whom it is not given, under a rule of construction pre-existing the statute? The act is remedial and should be interpreted according to its spirit, to prevent the evil it is intended to remedy. The rule of interpretation which would alter the intent of the testator during the period when his will is inactive and his intent remains in abeyance, is purely artificial, and would rob the statute of part of its effect, by establishing survivorship contrary to its spirit, and without the consent of the testator. Nine-tenths of the wills in the state are drawn by persons ignorant of the common-law doctrine of joint tenancy, to whom the idea of survivorship between the date of a will and the testator's death would never occur. To permit survivor-

ship to remain to control the devise in the interval, when the statute strikes it down the moment the will takes effect, would only entrap in many cases.

"We hold, therefore, where there is a devise to two or more, *nominatim*, without a plain intent of the testator to vest the estate in the survivor, the incident of survivorship is abolished by a proper interpretation of the Act of 1812, from and after the date of the will, and not merely from the death of the testator. But the testator may direct otherwise."

The Pennsylvania court thereby rejected the view prevailing in Virginia that under the statute abolishing the right of survivorship joint grantees or devisees hold as joint tenants until the first one dies and the statute becomes operative only upon death of one of the joint tenants. See Wythe's Chancery Reports, Appendix, 361 (Va.); *Lockhart v. Vandyke*, 97 Va. 356, 33 S. E. 613.

We are of the opinion that the determination by the Pennsylvania court as to the effect of the statute: to wit, that it changed joint tenancies into tenancies in common in the absence of an express intention that the estate be one in joint tenancy, is the more sound and realistic view. If the grand incident—survivorship—be abolished by statute, how can it reasonably be said that the legislative intent was that a technical joint estate should exist as such—the tenants holding by the half and by the whole—until the very moment one tenant dies? We, therefore, adopt the Pennsylvania view as expressed in *Kennedy's Appeal, supra.*

The rule of *Kennedy's Appeal* was followed in *Yard's Appeal*, 86 Pa. 125, wherein the court further held that the act of 1812 applied to personal as well as to real property.

The rule of *Arnold v. Jack's Executors, supra,* was followed in *McVey v. Latta*, 4 Weekly Notes of Cases 524 (Pa. 1877); *Jones v. Cable*, 114 Pa. 586, 7 Atl. 791 (1886); *Redemptorist Fathers v. Lawler, supra* (where the grant was to A, B, C and D "as joint tenants and not as tenants in common"); *McCallum's Estate*, 211 Pa. 205, 60 Atl. 903.

In the *McVey* case, *supra,* the court, perhaps through inadvertence, spoke of the devisees as tenants in common, although it upheld the right of survivorship. And, in *Re-*

*demptorist Fathers v. Lawler, supra,* the court appears reluctant to speak of the estate created by the deed as a joint tenancy with right of survivorship. It did say, however:

"Survivorship as an incident of an estate granted being still lawful, its creation becomes a question of intent. No particular form of words is required further than that they shall be sufficient to clearly express an intent in order to overcome the presumption arising from the statute."

■ The presumption spoken of as arising from the statute can only be the presumption that a grant or devise, not clearly intended to be held in joint tenancy, shall be deemed to create a tenancy in common. The presumption arising under the statute, then, is the opposite of that which arose at common law, where a grant to A and B was presumed to be to them as joint tenants in the absence of evidence of a contrary intention. Freeman, Cotenancy & Partition (2d ed.) 71, § 18; 2 Walsh, Commentaries on the Law of Real Property (1947 ed.) 2, § 115; 4 Thompson on Real Property (Perm. ed.) 323, § 1789. The presumption of tenancy in common under the statute is rebuttable. Where the necessary four unities exist and the intention is satisfactorily evidenced that the right of survivorship shall also exist (if no longer as an incident, then as a *principal* under the rule of *Arnold v. Jack's Executors, supra*), the estate created possesses the essential attributes of a joint tenancy as known to the common law and will be treated as such.

This appears to be the final view of the Pennsylvania court as expressed in *In re Leach's Estate,* 282 Pa. 545, 128 Atl. 497, where a joint tenancy in a library, with right of survivorship, arose by virtue of a *contract between the tenants entered into at the time the property was acquired.* The court there said:

"It therefore becomes necessary to determine when the half interest in the library was acquired by the sister, for if the right was secured by reason of the original agreement in 1899, then the succession cannot be under the brother's will, and no tax is assessable. This conclusion would admittedly follow if we were dealing with a tenancy by entireties (*Beihl v. Martin,* 236 Pa. 519), and, at common law, the same principle of survivorship was recognized where the

parties were joint tenants. This relationship exists where there has been established 'a single estate in property, real or personal,' so that the two or more interested persons become owners under an express agreement: 33 C. J. 901. In such case 'the [one] who survives does not take the moiety of the other tenant from him or as his successor, but takes it by right under the conveyance or instrument by which the joint tenancy was created' (33 C. J. 904), for title by survivorship was held to follow as an incident thereto.

"The Act of March 31; 1812 (5 Sm. L. 395), changed this rule, so that the joint tenant living longest should not take as a matter of law the share of the other, but this legislation limited only the legal presumption which formerly followed, and there was no restriction on the right of the parties to provide otherwise, by will, deed or agreement, and thus stipulate that the same rights of succession should continue as theretofore: *Arnold v. Jack's Executors,* 24 Pa. 57. 'Survivorship as an incident of an estate granted being still lawful, its creation becomes a question of intent. No particular form of words is required further than that they shall be sufficient to clearly express an intent in order to overcome the presumption arising from the statute': *Redemptorist Fathers v. Lawler,* 205 Pa. 24; *McCallum's Est.,* 211 Pa. 205."

The Pennsylvania courts, since the *Leach* case, have several times dealt with the right of persons to contract for joint ownership of bank accounts. *Mardis v. Steen,* 293 Pa. 13, 141 Atl. 629; *In re Haggerty's Estate,* 311 Pa. 503, 166 Atl. 580; *In re Lowry's Estate,* 314 Pa. 518, 171 Atl. 878; *Montgomery v. Keystone Sav. & Loan Ass'n,* 150 Pa. Super. 577, 29 A. (2d) 203. We are not here concerned with joint bank accounts, which are not true joint estates as known to the common law. See Rutledge, Joint Tenancy in Washington Bank Accounts, 26 Wash. L. Rev. 116; *Burns v. Nolette,* 83 N. H. 489, 144 Atl. 848, 67 A. L. R. 1051; *State v. Gralewski's Estate,* 176 Ore. 448, 159 P. (2d) 211, 161 A. L. R. 66; *Marble v. Treasurer and Receiver General,* 245 Mass. 504, 139 N. E. 442. But the bank account cases have served to emphasize the rules laid down in *Arnold v. Jack's Executors, supra,* and the later Pennsylvania cases.

It is thus clearly established, at least in cases dealing with deeds and wills, that where by the instrument of convey-

ance an intention is manifested to create a joint tenancy or an estate of survivorship, that intention will be given effect. The intention of a testator, if sufficiently expressed and not unlawful, should no doubt be honored. But in grants by deed, in the large majority of cases, it is of no concern to the grantor whether he conveys to his purchasers simply as A and B, or as to A and B "as joint tenants with right of survivorship and not as tenants in common."

When a grantor has been paid for conveying the property, he is not interested as to who shall be named as grantees or how they shall be described. The grantees, who may have agreed between themselves that they shall hold the property as joint tenants with right of survivorship, are the parties whose intention, in the case of deeds other than by gift, is the controlling element. Why, then, should not evidence of an agreement between the grantees that they shall acquire the property as joint tenants be at least equally as competent as the words of the deed itself to establish the intention necessary to rebut the statutory presumption that they took as tenants in common?

That the agreement of the joint tenants is competent to rebut the presumption of tenancy in common was recognized in the *Leach* case, *supra*. While that case dealt with an attempt to levy an inheritance tax upon the transfer of personal property, the joint tenancy there found to exist was a true joint tenancy possessing the four unities of time, title, interest and possession.

In *Ashbaugh v. Ashbaugh*, 90 Pittsburgh Legal Jour. 351, the plaintiff brought a bill in equity for reformation of a deed (in which he and his mother, then deceased, were named as grantees) to declare them joint tenants with right of survivorship. The plaintiff alleged that he and his mother had orally agreed at the time they acquired title that they should be joint tenants with right of the survivor to take the entire estate. In overruling preliminary objections to the bill the court said:

"It is to be borne in mind that in this case the title as grantees was taken by the plaintiff and his mother. Since the Act of March 31, 1812 (5 Sm. L. 395), it is the law of

Pennsylvania that two or more grantees (except husband and wife) are presumed to be tenants in common and not joint tenants. This act has been construed down to the present time as a declaration of the legislature raising a presumption but not binding if the true facts are to the contrary, see *Leach's Est.*, 282 Pa. 545; *Goldstein v. Hammell*, 49 Pa. Super. 39. As heretofore stated, the plaintiff has been in continuous possession of the property before and after his mother's death. The distinction between tenants in common, joint tenants with right of survivorship and title held by entireties is in each type highly technical and requires the advice of counsel learned in the law to distinguish. Therefore, it cannot be said that the plaintiff in this case is bound by the rule usually applied in criminal cases, namely, *ignorantia legis neminem excusat*. His bill of complaint definitely states that it was only a short time before same was filed, that he was advised by counsel that his claims, namely, survivorship and ownership of the property involved were not set forth in the deed to his mother and himself. . . .

"All of the averments in the bill of equity, at this stage of the proceeding, must be construed in favor of the plaintiff; therefore, if he can submit sufficient evidence to meet the legal requirements at a hearing, the chancellor could find that his claim to the property involved, namely, that of joint tenant with right of survivorship *was the contract between his late mother and himself* and that the deed could therefore be reformed in accordance with the prayer of the bill." (Last italics ours.)

We hereby adopt as sound and applicable to the instant case the construction placed by the Pennsylvania courts upon the act of 1812 abolishing the right of survivorship as an incident of joint tenancy. This act is an indirect, if not the direct, source of our own statute, which is almost identical in its language. Since joint tenancy is no longer favored in law, however, one asserting the right of survivorship should be held to strict proof of his claimed right. See *In re Baldwin's Estate,* 50 Ariz. 265, 71 P. (2d) 791.

We now turn to a consideration of the oral agreement between respondent and Miss Reck. That such agreement was made is not disputed; appellant in fact invited testimony establishing it.

The two teachers were undoubtedly not aware of the technical rules of law pertaining to an estate held in joint tenancy. They did have an agreement and an objective, however: That the survivor should take all of the Seattle and ocean properties upon the death of the first one to die. Their agreement embraced the distinguishing feature of joint tenancy: the right of survivorship.

■ Courts have readily defined the estate sought to be created by relying upon the intention of the parties to the instrument to have the right of survivorship. *Michael v. Lucas*, 152 Md. 512, 137 Atl. 287; *Mitchell v. Frederick*, 166 Md. 42, 170 Atl. 733, 92 A. L. R. 1412; *Maxwell v. Saylor*, 359 Pa. 94, 58 A. (2d) 355. We are of the opinion that the oral agreement was in effect one to hold the properties as joint tenants.

Before considering the effect of this statute (Rem. Rev. Stat., § 1344) upon the right of respondent and Miss Reck to contract for the right of survivorship as to their real property, we shall advert to the court's findings. There are no findings as to the precise time when title to the Seattle and ocean properties were acquired, nor did the court fix the date when respondent and Miss Reck made their oral agreement for survivorship. The court's finding relating to these matters was:

"That for some twenty-five years prior to her death the said Myrtle Jane Reck and the defendant Grace Melville were close personal friends and lived together. During all of this time they jointly shared expenses and bought property jointly. That during the lifetime of said Myrtle Jane Reck she and the defendant Grace Melville jointly purchased the property described as follows, to wit: [Here follows description of the Seattle property.] That they likewise acquired, jointly, title to the following described property situated in Grays Harbor County, Washington, known as: [Here follows description of the ocean property.]

"That Myrtle Jane Reck and Grace Melville *had for many years agreed between themselves that their jointly owned property should be the property of the survivor.* That on April 14, 1937, in contemplation of a trip which they were expecting to make, and in order to properly effectuate their agreement, they, together, consulted . . . an attorney,

disclosed their agreement, and requested him to prepare such documents as would properly effectuate their agreement. . . ." (Italics ours.)

We necessarily, therefore, must examine the record to determine whether their agreement was in effect at the time these two properties were acquired. .

The Seattle property was purchased on contract and the only reasonable inference from the testimony is that title to this tract was not acquired until some time in January, 1945, at which time the survivorship agreement was still in effect. The four unities of time, title, interest and possession, generally considered essential to the creation of a joint tenancy, were present. The grantees acquired their interests at the same moment and by the same instrument. Their interests were identical, each owning the whole in fee and each possessed the whole of the property.

"Where there is a joint tenancy, each of the tenants has an undivided moiety of the whole, and not the whole of an undivided moiety. While the joint tenancy continues, each of the two tenants has a complete interest in the whole, and on the death of one the whole interest in the whole remains in the survivor." *In re Peterson's Estate,* 182 Wash. 29, 45 P. (2d) 45; *Nelson v. Olympia Federal Sav. & Loan Ass'n,* 193 Wash. 222, 74 P. (2d) 1019.

Since respondent's interest in the Seattle property was in the whole thereof, nothing passed to her upon the death of Miss Reck and the statute of wills is not contravened.

We, therefore, conclude that the trial court properly dismissed the action in so far as the Seattle property is concerned.

Respondent's present estate in severalty therein arises from the survivorship agreement and the joint tenancy created thereby, and not by reason of the deed executed by Miss Reck, which is merely evidence of the survivorship agreement.

There is nothing in the record, however, to show when title to the ocean property was acquired and we have no means of knowing whether the survivorship agreement was in effect at that time.

The presumption is that respondent and Miss Reck acquired title thereto as tenants in common. In the absence of proof of an agreement or intention to the contrary at the time title was taken, they must be held to have become tenants in common of the ocean property, and each owned a separate estate therein, to wit, an undivided one-half interest.

The agreement was only that the survivor should take all; it conveyed nothing. *Pope v. Burgess*, 230 N. C. 323, 53 S. E. (2d) 159.

Since, as tenants in common, each owned a separate estate, to wit, an undivided one-half interest in the ocean property, the survivorship agreement was merely an abortive attempt to pass property at death. The trial court erred in dismissing the action as to the ocean property.

■■ The Gold Bar property, title to which, at Miss Reck's direction, was taken in the name of respondent, is in a different category. We have reviewed the evidence upon which the trial court's finding relating thereto is based and are of the opinion that Miss Reck intended a present gift to respondent, reserving to herself a life estate as to her one-half interest. A valid gift of real estate may be made *inter vivos* even though the donor may retain the use, management and control of the property during his lifetime. *In re Cunningham's Estate*, 19 Wn. (2d) 589, 143 P. (2d) 852.

■ A judgment, although based upon an erroneous ground, will nevertheless be sustained if correct upon any ground. *In re Kessler's Estate*, 35 Wn. (2d) 156, 211 P. (2d) 496; *In re Bodvin's Estate*, 37 Wn. (2d) 872, 226 P. (2d) 878; *Senior Citizens League v. Department of Social Security*, 38 Wn. (2d) 142, 228 P. (2d) 478.

To summarize, we hold that respondent Grace Melville had a valid title to the Seattle property and to the Gold Bar property and the trial court properly dismissed appellant's action as to them. The court erred, however, in dismissing the action as to the ocean property, in which appellant has

an undivided one-fourth interest as an heir of Myrtle Jane Reck, deceased.

For the reasons herein stated, the judgment is reversed and the cause is remanded for further proceedings in accordance with this opinion.

Respondent will recover her costs in this court.

MALLERY, HILL, HAMLEY, and FINLEY, JJ., concur.

GRADY, J. (dissenting in part)—I concur in the result reached by Judge Donworth with reference to the Seattle and Gold Bar properties, but dissent from the holding that respondent and Miss Reck owned the ocean property as tenants in common. This latter thought is based upon the theory that the record does not show affirmatively that the survivorship agreement was in effect when that property was acquired by them. I think, however, there is sufficient in the record from which a justifiable inference may and should be drawn that the survivorship agreement was made when the two ladies first decided to pool their interests with reference to any and all real estate they might acquire together, and that such occurred before they contracted to purchase any of the properties referred to in the record.

Respondent testified that she and Miss Reck contacted an attorney in 1937 "to effectuate that agreement," meaning, of course, the verbal agreement as to survivorship. Her testimony warrants the conclusion that they had made the verbal agreement and operated under it for some time, but desired to have it put in some tangible form in view of the fact they both contemplated making an extended trip and desired to avoid complications in the event of the death of one of them. The deeds and will serve as written evidence of their intention with reference to survivorship. The first property the ladies acquired together was some vacant lots in 1925, which they later sold. The next property acquired was the Seattle home, next the ocean property for a summer home and the next the Gold Bar property. Their entire course of dealing indicates that it was their intention to ac-

quire property together and that the survivor should become the sole owner thereof.

I would affirm the judgment in its entirety.

WEAVER, J. (dissenting in part)—The question presented in this case is whether co-owners of real property (presumptively as tenants in common) can, by means of an escrow containing deeds from one to another, and a will of the grantee devising the property to the grantor, establish thereby a right of survivorship to the exclusion of heirs at law of the grantor, when the delivery of the papers in escrow (the deeds and the will) was dependent upon which of the parties died first. There is the further consideration that the grantor and grantee had agreed orally that the survivor should take all. The majority opinion holds that this agreement made the parties owners of an estate in joint tenancy.

I concur with that portion of the majority opinion determining that the Gold Bar property belongs to respondent upon the theory that Miss Reck intended a gift to respondent of her interest therein, reserving to herself a life estate as to her one-half interest.

I also agree with the conclusion reached in the majority opinion determining that the ocean property was owned by Miss Reck and Miss Melville (respondent) as tenants in common and that, as to this property, "the survivorship agreement was merely an abortive attempt to pass property at death."

I dissent from that portion of the majority opinion which concludes that:

"Respondent's present estate in severalty therein [the Seattle property] arises from the survivorship agreement *and the joint tenancy created thereby*, and not by reason of the deed executed by Miss Reck, which is merely evidence of the survivorship agreement." (Italics mine.)

To my mind, the fallacy of this conclusion is based upon the failure to distinguish between (a) an estate in joint tenancy (of which survivorship is one of the characteristics), and (b) an agreement between co-owners of property

that the survivor shall take all. See *Teacher v. Kijurina*, 365 Pa. 480, 488, 76 A. (2d) 197 (1950). The existence of such an agreement does not, *ipso facto*, make their ownership in the subject matter of their agreement an estate in joint tenancy. *The effectiveness and validity of such an agreement must be determined by the manner of its creation and the method of its execution.*

Conceding for the purpose of argument that an estate in joint tenancy in real property may be created in this state despite RCW 11.04.070, under certain circumstances and *by proper means* (a conclusion reached by the majority but upon which I express no opinion), I cannot find from the record in this case that such an estate *was* created in either the Seattle or the ocean properties.

The record is short and the facts are meager. It will be helpful to point out several things which do not appear in the record before considering what does appear.

(a) It does not appear whether the *oral* agreement that their jointly owned property should be the property of the survivor was made before, contemporaneous with, or subsequent to the acquisition of the Seattle and the ocean properties.

(b) It does not appear definitely when Miss Reck and Miss Melville acquired the Seattle and ocean properties, except as hereafter noted.

(c) The deeds are not in evidence by which title to these properties was acquired. It is conceded by the parties that the names of Miss Reck and Miss Melville appeared as grantees in the deed of the ocean property.

I turn now to what the record does show of the transaction between the parties.

(a) The Seattle property was purchased on contract prior to April 14, 1937. They completed their payments on the contract in January, 1945. On March 31, 1945, the date of Miss Reck's death, the title to the Seattle property stood in the names of Miss Reck and Miss Melville. It does not appear that the deed vesting title named both of them as

grantees, but, for the purpose of this dissent, I assume that it did. The litigants so considered it.

(b) The Seattle property was purchased upon contract *before* the ocean property.

(c) An interest had been acquired in both the Seattle and ocean properties prior to April 14, 1937, the date they consulted counsel to have the quitclaim deeds and will prepared and executed.

(d) The agreement between Miss Melville and Miss Reck is best expressed in the testimony of Miss Melville when called by the plaintiff as an adverse witness. She testified as follows:

"Q. What was that agreement between the two of you? A. Well, we decided that we should be planning for that thing. We were having a long trip in 1937 and *we decided that we had better have some arrangements in case something happened to one or the other of us*, and so we went down to Mr. Kinney, Mr. Tom Kinney, in the spring. We chose him because he was a young attorney, younger a good deal than we were and we thought he would be alive after we were gone, and we—I made a will and willed all the real estate I owned to Myrtle J. Reck and she made quitclaim deeds for the two pieces of property that we owned at that time to me, and those were to be kept by Mr. Kinney until— . . . Q. Do I understand you that the agreement was that the survivor would take all the property? A. Yes. We earned it together and we thought we had a right to. Q. Then you went to Mr. Kinney, as you stated, to effectuate that agreement? A. Yes. Q. What did you do to effectuate this oral agreement? A. What do you mean? I made a will, is that what you mean? Q. Yes, what did you and Miss Reck do? A. I willed all of the real estate property of which we were possessed at that time, which in case of my death would go to Myrtle J. Reck. . . . Q. And what did Miss Reck do to consummate her half of the agreement? A. She signed deeds for the property that we had at that time, owned together, in my favor. Q. What properties did she sign the deeds for? A. The ocean property, the acre at Grays Harbor at Ocean city, and the home property at 8203 8th Northeast, Seattle. Q. I see. Was there any other agreement that the two of you signed at that time? A. No, not that I recall. . . .

"Q. Now, what was your joint agreement, what did you two agree with reference to the situation had you died first? Would she be able to— A. My will gave everything in real estate to her. Q. And she would take the—would she take the will and the deeds back at that time? A. *That was the understanding.* Q. That was the understanding? A. Yes. . . .

"Q. And you felt that you accomplished your design of being able to each of you take the half of the other in case of the death of the other? A. (Witness nods her head.) Q. There was absolutely no change in your ownership of the property? A. No." (Italics mine.)

The attorney who drew and with whom the two deeds and will were left in escrow testified:

"Q. What did they tell you they wanted to accomplish? A. *They wanted to accomplish an arrangement whereby all of their assets would go to the survivor,* since they had commingled their funds, and the survivor would arrange for a disposition of the property . . . Q. Mr. Kinney, at the time these instruments were left with you what instructions were given to you? A. Instructions were given to me substantially in this form, that I was to keep the three documents together and in the event of the prior decease of Miss Reck I was to give the documents to Miss Melville, and in the event of the prior decease of Miss Melville I was to give all of the documents to Miss Reck." (Italics mine.)

It appears from the testimony that Miss Reck and Miss Melville did not have a contract—and did not consider that they had an effective agreement of survivorship—prior to April 14, 1937, the day they went to Mr. Kinney, the lawyer. Of course, they had an understanding of what they wished to have accomplished; and the problem of this case is to determine whether that which they did on April 14, 1937, legally accomplished their agreed purpose. The majority opinion approaches the problem by *assuming* that they had an oral contract of survivorship *prior* to April 14, 1937, and then tests to determine whether such a contract is valid in this state. The facts do not support the major premise of the majority opinion and it thus becomes unnecessary, to my mind, to explore the minor premise and the conclusion of the syllogism upon which the majority opinion is based.

The true estate in joint tenancy in real property (as distinguished from an agreement of survivorship between co-owners) presents some of the most artificial rules and subtle distinctions of the common law. A distinguishing characteristic is that it arises by way of grant or devise and never by way of descent or other acts of law. It would unduly extend this dissent to analyze in detail each of the cases cited in the majority opinion directed to the proposition that, under the facts of each case, an estate in joint tenancy was established. In view of the facts of the instant case, it is sufficient for my purpose to state that in all such cases (except two) the right of survivorship was either established in the deed of conveyance or by devise. The two exceptions are *In re Leach's Estate*, 282 Pa. 545, 128 Atl. 497 (1925), and *Ashbaugh v. Ashbaugh*, 90 Pittsburgh Legal Jour. 351 (1942).

Both cases are distinguishable. In the former, the state of Pennsylvania levied an inheritance tax of fifty dollars upon one half the value of a historical library collected over many years by a brother and sister. The survivor, the sister, argued that no tax could be levied for she and her brother were joint tenants therein with the right of survivorship. The court said:

"It therefore becomes necessary to determine when the half interest in the library was acquired by the sister, for if the right was acquired by reason of the original agreement in 1899, then the succession cannot be under the brother's will and no tax is assessable. . . . The sister's rights then accrued, and the one-half did not pass to her by succession from him, *but by reason of her contract of purchase*." (Italics mine.)

The facts of the *Ashbaugh* case (1942), *supra*, are set forth in the majority opinion. It was a proceeding in the court of common pleas of Allegheny county. To date, it has not been cited as authority by any court, even in Pennsylvania. It was decided upon demurrer and simply held that:

"All of the averments in the bill of equity, *at this stage of the proceeding*, must be construed in favor of the plaintiff . . ." (Italics mine.)

In the latest case upon the subject in Pennsylvania, *Teacher v. Kijurina, supra*, the supreme court held that:

"The intent of the grantees must be gleaned solely from its [the conveyance] language . . . In absence of fraud, accident or mistake parol evidence is inadmissible to vary or limit the scope of a deed's express covenants and the nature and quantity of the interest conveyed must be ascertained by the instrument itself and cannot be orally shown." (p. 486.)

To establish a rule of property as drastic as that proposed by the majority opinion, upon facts as deficient as those of the instant case, would have a thunderous effect. Assuming that the deed to the Seattle property stood in the names of Miss Reck and Miss Melville, and assuming nothing more, the interest of Miss Reck would, upon her death, descend to her heirs by operation of RCW 11.04.070. The majority opinion interprets the facts in such a way as to append to this deed an *oral* agreement setting up cross-contingent remainders in real property. While a tenancy in common to two for life with cross-contingent remainders to the survivor in fee might possibly be created by deed (see *Erickson v. Erickson*, 167 Ore. 1, 115 P. (2d) 172), such remainders cannot be created *orally*. The determination of the exact nature of the situation assumed by the majority opinion may well await the trial of a case wherein the facts present that question.

I have little to add to the excellent discussion in the majority opinion concluding that the trial court erred in drawing its conclusion of law that title to the Seattle and ocean properties vested in Miss Melville, subject to a life estate in Miss Reck as to her one-half interest, at the time the deeds were left with the attorney.

There was no present intention that title should pass at the time the escrow was established, and there was no delivery of the deeds during the lifetime of the grantor. Where a deed is handed to a third person with instructions to keep it until the death of either the grantor or grantee, and then to deliver it to the survivor, the delivery is not

effectual for it is conditional upon the grantee (Miss Melville) surviving the grantor (Miss Reck).

Both the Seattle and the ocean properties are in the same position. The escrow as to both "was merely an abortive attempt to pass property at death."

The decree should be reversed and the case remanded with directions to the trial court to quiet title in appellant in an undivided one-fourth interest in the Seattle and ocean properties.

SCHWELLENBACH, C. J., and OLSON, J., concur with WEAVER, J.

### ORDER DENYING PETITIONS FOR REHEARING.

The above entitled cause coming before the court upon the petitions for rehearing filed by appellant and *amicus curiae,* and it appearing to the court that among other reasons assigned by the petitioners for a rehearing of the case is that the statute of frauds was violated by the agreement made by the respondent and the decedent, and it further appearing that the issue of the statute of frauds was not theretofore raised and therefore could not be considered or determined on this appeal, and the court having considered such petitions,

IT IS ORDERED, That the petitions of appellant and *amicus curiae* for a rehearing of this cause be and the same are hereby denied.

Dated this 25th day of February, 1953.

THOMAS E. GRADY,
*Chief Justice.*